**ROSEN & ASSOCIATES, P.C.**
*Counsel to 250 E. 87 Owners Corp.*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NEWBURY OPERATING LLC,<br><br>                              Alleged Debtor. | Chapter 7<br><br>Case No. 20–12976 (JLG) |

**MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE**

TO THE HONORABLE JAMES L. GARRITY JR.,
UNITED STATES BANKRUPTCY JUDGE:

      250 E. 87 Owners Corp., petitioning creditor and party-in-interest (the "**Co-Op**"), through its counsel, Rosen & Associates, P.C., hereby move this Court (the "**Trustee Motion**") for the entry of an order appointing an interim trustee pursuant to 11 U.S.C. § 303(g) and Rule 2001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**" or "**Rules**"). In support of this Motion, the Co-Op submits the *Affidavit of Peter Pretsfelder* (the "**Pretsfelder Affidavit**"), which is annexed hereto as *Exhibit A* and fully incorporated herein by reference, and respectfully represents as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATE**

    1.    This Court has jurisdiction to consider this core proceeding pursuant to 28 U.S.C. §§ 157and 1334. Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. §§ 303(g), as supplemented by Bankruptcy Rule 2001.

## FACTUAL & PROCEDURAL BACKGROUND

2. The Co-Op is a cooperative housing corporation, duly incorporated and existing under the laws of the State of New York, and the owner of certain real property located at 250 East 87th Street, New York, New York (the "**Building**").

3. Upon information and belief, Newbury Operating LLC ("**Newbury**" or the "**Alleged Debtor**") is a limited liability company, duly authorized to conduct business within the State of New York, with a principal place of business within the City and State of New York.

4. Since 2013, Newbury has occupied the parking garage area of the Building (the "**Garage**"), pursuant to a lease agreement dated December 31, 2012 (the "**Lease**") by and between the Co-Op, as landlord, and Newbury, as tenant. Under the Lease, Newbury operates a facility for the parking and storage of passenger motor vehicles, bicycles, car sharing and electronic car charging for a term commencing on January 1, 2013 and expiring on December 31, 2024.

5. Pursuant to Article 1 of the Lease, Newbury is obligated to pay the Co-Op base rent in the amount of $73,958.33 per month, as well as additional rent, defined as, "all sums other than base rent, including late charges, tax escalation, service charges, interest, [and] any other costs." *See* PRETSFELDER AFF., Ex. 1.

6. Newbury has failed and refused to pay rent to the Co-Op since April of 2020, notwithstanding that it has continued to operate the Garage and receive the associated revenue. Indeed, even during the pandemic, Newbury has received monthly parking fees from its approximately two hundred twenty (220) monthly customers who pay between $325 and $425 per month and has not closed the Garage one single day. *See* PRETSFELDER AFF. ¶ 11.

7. As set forth in the Pretsfelder Affidavit, all attempts by the Co-Op to collect the outstanding debt against Newbury have been futile. *See id.* ¶¶ 5-9.

8. As a result of Newbury's breach of the Lease, the Co-Op—which relies on the rent Newbury is obligated to pay under the Lease to satisfy its own monthly payment obligations—has been unduly burdened and its ability to conserve, maintain and preserve the Building has been compromised. *See id.* ¶¶ 11-13.

9. Upon information and belief, Newbury has, and continues to, dissipate its assets by fraudulently conveying its revenues to affiliated entities in willful and knowing violation of its contractual obligations to the Co-Op and other creditors. *See id.* ¶ 4.

10. Thus, on December 28, 2020 (the "**Petition Date**"), the Co-Op commenced this case by filing an involuntary petition for relief (the "**Involuntary Petition**") against Newbury under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

11. As of December 28, 2020, Newbury owes the Co-Op approximately $655,884 on account of its obligations under the Lease. *See id.* ¶ 10.

12. Newbury received service of process of the *Summons* [Doc. No. 2] and the Involuntary Petition [Doc. No. 1] on December 30, 2020. *See* CERT. OF SERVICE [Doc. No. 5].

13. To date, Newbury remains in possession and has not filed an answer to the Involuntary Petition or otherwise appeared herein.

## RELIEF REQUESTED

14. By this Motion, the Co-Op seeks the entry of an order appointing an interim trustee pursuant to section 303(g) of the Bankruptcy Code to protect and preserve the property of the estate until the entry of an order for relief.

3

**DISCUSSION**

15. Under section 303(g) of the Bankruptcy Code, at any time after the commencement of an involuntary chapter 7 case but before an order for relief, the Bankruptcy Court:

> [O]n request of a party in interest, after notice to the debtor and a hearing, and ***if necessary to preserve the property of the estate or to prevent loss to the estate***, may order the United States trustee to appoint an interim trustee under section 701 … to take possession of the property of the estate and to operate any business of the debtor.

*See* 11 U.S.C. § 303(g) (emphasis added).

16. Applying this broad statutory standard, bankruptcy courts routinely appoint interim trustees, when necessary to "protect and preserve property of the estate ... prevent concealment, waste or loss of assets by the alleged debtor ... or prevent irreparable harm which would likely result between the time of the filing of the petition and the scheduled hearing." *See In re Dilorenzo,* 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993) (citing *In re Alpine Lumber & Nursery,* 13 B.R. 977 (Bankr. S.D. Cal. 1981) (prevent concealment, waste or loss of assets by the debtor); *In re Reed,* 11 B.R. 755 (Bankr. S.D. W. Va. 1981) (same).

17. Indeed, this is consistent with the legislation history, which instructs that an alleged debtor should not remain in control of its assets if it is shown that it "may attempt to abscond with assets, dispose of them at less than their fair market value, or dismantle [its] business, all to the detriment of creditors." *See DiLorenzo*, 161 B.R. at 754 (quoting H.R. Rep. 95-595, at 323 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6280); *see generally* COLLIER ON BANKRUPTCY ¶ 303.31 at 93-94 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2002) (court may appoint

4

interim trustees to preserve property of the estate or prevent loss, concealment, or conversion of assets).

19. In *In re McCorhill Publications, Inc.*, this Court has held that, "where there are questionable inter-company financial transfers and the principals of the debtor occupy conflicting positions in the transferee companies, a trustee should be appointed in the best interest of creditors and all parties in interest in order to investigate the financial affairs of the debtor." *See In re McCorhill Publishing, Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987); *In re B.D. Int'l Discount Corp.*, 13 B.R. 635 (Bankr. S.D.N.Y 1981) (refusing to dismiss or abstain from adjudicating an involuntary chapter 7 case on the grounds that judicial oversight through its power to appoint a trustee was crucial to the protection of the estate for the benefit of creditors); *see also In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3d Cir. 1989) (affirming the appointment of a trustee when there was evidence of the debtor's pre-petition "systematic siphoning of ... assets to other companies under common control," as such behavior, "raises grave questions about current management's ability to fulfill its duties"); *In re James Plaza Joint Venture*, 62 B.R. 959, 962-963 (Bankr. S.D. Tex. 1986) (allowing appointment of interim trustee where there was evidence of danger that debtor will dissipate the remaining assets of the estate).

19. Here too, this case is replete with evidence of the "systematic siphoning of ... assets to other companies under common control" of Newbury, which, if not prevented, will cause irreparable harm to creditors.

20. Thus, the Co-Op submits that the appointment of an interim trustee is warranted and necessary to preserve and protect the value of Newbury's estate. *See In re Landmark Distribs., Inc.,* 189 B.R. 290, 305 (Bankr. D.N.J. 1995) (emphasizing the availability of section 303(g) where petitioning creditors fear dispersion of Debtor's assets during the interim period);

5

*contra In re Rush*, 10 B.R. 518 (denying request for interim trustee where evidence did not show that debtor was presently disposing of or wasting property of the estate).

## CONCLUSION

21.     In light of the foregoing, the Co-Op respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper, for all of which no prior request for relief has been made to this or any other Court.

Dated: New York, New York
      January 8, 2021

**ROSEN & ASSOCIATES, P.C.**
*Counsel to 250 E. 87 Owners Corp.*

By:  /s/ *Sanford P. Rosen*
      Sanford P. Rosen
      Paris Gyparakis

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100