CULLEN AND DYKMAN LLP
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Email: ndee@cullenllp.com
        eaboulafia@cullenllp.com

*Counsel to Newbury Operating LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                              :

In re:                            :    Chapter 7
                              :

NEWBURY OPERATING LLC      :    Case No. 20-12976 (JLG)
                              :
                              :

           Alleged Debtor.       :
                              :
-------------------------------------------------------------x

## OBJECTION OF NEWBURY OPERATING LLC TO THE
## MOTION FOR APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE

Newbury Operating LLC ("Newbury"), by and through its counsel Cullen and Dykman LLP, hereby submits this objection (this "Objection") to the ex parte *Motion for Appointment of Interim Chapter 7 Trustee* (the "Motion" at Dkt. No. 7)[1] filed by 250 E. 87 Owners Corp. (the "Petitioning Creditor" or the "Landlord") on January 8, 2021 pursuant to which the Petitioning Creditor seeks the rare remedy of appointment of an interim trustee pursuant to section 303(g) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") pending a determination of its Involuntary Petition. In support of this Objection, Newbury submits the declaration of John D. Smith (the "Smith Declaration"), Chief Executive Officer of Icon Parking Holdings, LLC ("Icon"), the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

indirect parent and manager of Newbury, a copy of which is annexed hereto as <u>Exhibit "A"</u> and incorporated herein by reference, and respectfully states as follows:

<u>PRELIMINARY STATEMENT</u>

The Petitioning Creditor has failed to meet its burden of proving that the rare appointment of an interim trustee is warranted under the circumstances because the Petitioning Creditor cannot demonstrate either a reasonable likelihood that an order for relief will be entered or that there exists a substantial risk of loss to the estate. Rather, this Motion, just like the Involuntary Petition itself, represents nothing more than the Landlord's latest attempt to disguise its two-party collection dispute with its COVID-battered tenant as an emergent situation requiring extraordinary relief so that it can short circuit the protections that New York State has expressly implemented for the benefit of commercial tenants in the wake of the ongoing pandemic. Days after receiving Newbury's opposition to an Order to Show Cause for the appointment of a temporary receiver in the State Court Action, presumably disappointed with its prospects for success, the Petitioning Creditor filed the instant Involuntary Petition and ex parte request for an interim trustee. This blatant attempt at forum shopping should not be entertained by this Court because this is nothing more than a two-party dispute for non-payment of rent for which the Petitioning Creditor has an adequate remedy in the State Court Action now pending in the forum designated under the Lease. For the reasons set forth herein, the Motion should be denied.

<u>RELEVANT BACKGROUND</u>

A.    <u>The Lease and Impact of COVID-19 Pandemic</u>

1.    On or around December 31, 2012, Newbury entered into the Lease with the Petitioning Creditor pursuant to which Newbury became authorized to operate a parking garage

2

located in the building situated on land known as 250 E. 87th Street, New York, New York (the "Garage").  Under earlier iterations of the Lease, Newbury or its predecessor-in-interest has been operating the Garage since 1997.  *See* Smith Declaration, ¶ 1.

2.      The Garage is operated as an Icon Parking branded garage and Newbury is among the subsidiary entities operated as part of the Icon Parking.  *Id.* at ¶ 2.  As part of this arrangement, Icon provides Newbury with management and administrative services to support the operation of the Garage.  *Id.*  Icon maintains accurate books and records in the ordinary course of business utilizing accounting methodologies that are in accordance with GAAP.  *Id.* Approximately six individuals work at the Garage and they are members of the Garage Employees Union Local No. 272; Icon is responsible for payment of union benefits and dues on Newbury's behalf.  *Id.*

3.      As evidenced by the account history annexed to the Pretsfelder Affidavit as Exhibit 7, Newbury made payment of rent to Petitioning Creditor under the Lease on a monthly basis without exception prior to the onset of the COVID-19 pandemic in March 2020.  *See* Motion, Ex. A, Ex. 7.  Historically, Newbury operated the Garage with little to no profit, generally achieving close to "break even" status at the end of any given year.  Smith Declaration, ¶ 3.

4.      With the onset of COVID-19 in March 2020 and resulting government-mandated closure of all non-essential businesses, Newbury's financial situation worsened significantly.  *Id.* at ¶ 4.  Many New Yorkers lost their jobs or were subject to furloughs, and those who still had jobs were, with few exceptions, working remotely.  *Id.*  More so than other major U.S. cities, New York experienced a mass exodus with hundreds of thousands of New Yorkers leaving the

City during the spring and summer of 2020. *Id.* By and large, New Yorkers and commuters from neighboring locales had no need for transient parking. *Id.*

5. As a result, Newbury experienced a precipitous decline in revenues, thus impairing its ability to pay its operating expenses, including rent owed under the Lease. *Id.* at ¶ 5. In the first several months of the pandemic, Newbury's business decreased by more than 25%. *Id.*

6. Through a series of executive orders signed by Governor Cuomo on March 20, 2020 and since extended from time to time, the State of New York instituted a moratorium on commercial evictions in recognition of the financial toll that the COVID-19 pandemic has taken on commercial tenants such as Newbury with the stated purpose of allowing commercial tenants additional time to get back on their feet and renegotiate lease terms. *Id.* at ¶ 6.

7. In April 2020, Newbury suspended rent payments while assessing the impact the pandemic would have on revenue. *Id.* at ¶ 7. When it became clear the impact would be significant, Newbury attempted to negotiate some rent relief with the Landlord to reflect the situation. *Id.* Newbury made several efforts of the past nine months to resolve the dispute, but to no avail. *Id.*

8. On October 21, 2020, the Landlord drew down on a letter of credit that it was holding as security under the Lease in the amount of $196,875.00, thus reducing the arrearages due to it under the Lease. *Id.* at ¶ 8. The letter of credit issuing bank thereafter demanded and obtained reimbursement from Icon for such sums which have been paid. *Id.*

9. Newbury has generally remained current on its other obligations to trade vendors that service the Garage. *Id.* at ¶ 9. As of December 28, 2020, the date the Involuntary Petition was filed, Newbury's only creditor was the Landlord. *Id.*

**B.**      **The Landlord's State Court Action and Pending Request for Receiver**

10.      Newbury's negotiations with the Landlord have not been successful and, as set forth in detail in the Pretsfelder Affidavit submitted with the Motion, the Petitioning Creditor admits that it chose to initiate a two-party dispute against Newbury in October 2020 when it filed a collection action against Newbury in the New York Supreme Court, New York County, Index No. 655282/2020 (the "State Court Action") which remains pending.  *See* Motion, Ex. A, ¶ 5.

11.      On November 30, 2020, the Petitioning Creditor chose to move by order to show cause for the appointment of a receiver in the State Court Action with, among other things, authority to retain the services of a parking garage operator to operate the Garage and collect the fees generated therefrom.  *See* Motion, Ex. A, ¶ 8, Ex. 5.  In the affidavit submitted by Peter Pretsfelder in support of the appointment of a receiver, the Petitioning Creditor admits that the purpose of the request for a receiver is to circumvent the government mandated protections put into place by Governor Cuomo's executive orders to protect businesses such as Newbury who have been devastatingly impacted by the COVID-19 pandemic.  *See id.* at ¶ 15 ("A receiver is especially important because as a result of the Covid-19 pandemic and Executive Order No. 202.28 . . . Plaintiff does not have the ability to commence an eviction proceeding . . .").

12.      Pursuant to the order to show cause, Newbury submitted its opposition to the receiver motion on December 22, 2020 and hearing was scheduled for January 12, 2021.  Smith Declaration, ¶ 11.  Apparently concerned about its likelihood of prevailing on its request for the appointment of a receiver in the State Court Action, the Petitioning Creditor commenced the instant proceeding.  The only reason the receiver motion is not being heard this week in the State Court Action is because the Landlord filed a letter notifying the court of the automatic stay resulting from the filing of the Involuntary Petition.  *Id.* at ¶ 12.

C.     **The Petitioning Creditor's Attempt to Use the Bankruptcy Court to Expedite the Relief Sought in State Court**

13.     On December 28, 2020, the Petitioning Creditor, as the sole petitioning creditor, filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code (the "Involuntary Petition") against Newbury.   The Involuntary Petition was served by first class mail on December 30, 2020 at the Icon corporate headquarters and the address for service of Newbury's registered agent, thus triggering Newbury's twenty-one (21) day period to respond.  *See* Dkt. No. 5.

14.     On January 8, 2021, the Petitioning Creditor filed an *ex parte* motion to shorten notice and schedule an expedited hearing on the Motion, together with the Motion.  *See* Dkt. Nos. 7-8.

## OBJECTION

15.     Newbury submits that the Motion should be denied because the Petitioning Creditor has failed to put forth any factual or legal basis to support the extreme remedy of appointment of an interim trustee pending a determination of the Involuntary Petition.  The filing of an involuntary petition itself is "an extreme remedy with serious consequences", and the appointment of an interim trustee is considered "[a]n even more extreme remedy . . . permitted by section 303(g) of the Bankruptcy Code" only under the following circumstances:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor . . .

11 U.S.C. § 303(g); *In re Diamondhead Casino Corp.*, 540 B.R. 499, 505 (Bankr. D. Del. 2015).

16.     Among other things, the right of Newbury to be free to operate its business in the ordinary course has been described as "the most important protection given [an alleged debtor] by the Code." *In re DiLorenzo*, 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993) (internal citations omitted). Contrary to the baseless allegations made in the Motion that the appointment of an interim trustee is a "routine" matter (Motion, ¶16), a request for such relief is "rare" and "[t]he case law that does exist counsels that a request for an interim trustee should be denied in 'the absence of an exceptionally strong need for doing so' or 'where no facts are alleged showing a necessity for the appointment.'" *See id.* (citing *In re Levin*, 2011 WL 1469004, at *2 (Bankr. S. D. Fla. April 15, 2011)). Indeed, the Motion itself cites to only one case in which an interim trustee was appointed under section 303(g) of the Bankruptcy Code under circumstances distinguishable from the facts of the instant case.[2]

17.     Accordingly, in determining whether to grant the exceptional remedy of appointment of an interim trustee, "the court must determine, as a preliminary matter, that there is a reasonable likelihood that an order for relief will be entered." *Diamondhead Casino Corp.*, 540 B.R. at 505; *In re Rush*, 10 B.R. 518, 523-24 (Bankr. N.D. Ala. 1980) (stating that "the request for the trustee should not be granted in the absence of an exceptionally strong need for doing so" because "[t]he appointment of an interim trustee is a matter which rests upon an inherent requirement that it be of prospective benefit to creditors, in the event of entry of an order for liquidation of the debtor's estate"). If that threshold inquiry is satisfied, then the movant must also show "a substantial risk of loss to the estate" in order to warrant the imposition of an interim trustee. *Id.*

---

[2] The interim trustee appointed in *In re James Plaza Joint Venture* was the same individual who was serving as trustee in an involuntary case of a related entity. 62 B.R. 959, 960 (Bankr. S.D. Tex. 1986). The remaining cases cited in the Motion address the appointment of chapter 11 trustees in voluntary cases under section 1104 or involuntary cases which in dicta discuss the remedy available under section 303(g) of the Bankruptcy Code.

18.     For the reasons set forth herein, the Petitioning Creditor has failed to meet its burden of showing that the extraordinary relief of an interim trustee during the gap period is appropriate because (i) it is not reasonably likely that an order for relief will be entered and (ii) there is no substantial risk of loss to the estate pending a determination of the Involuntary Petition.  Moreover, the Motion should be denied because this case is nothing more than a two-party dispute and the Bankruptcy Court is not a collection agency for creditors with remedies in state court such as the Petitioning Creditor who initiated the State Court Action.

**A.**     **The Motion Should Be Denied Because it is Not Reasonably Likely that an Order for Relief Will Be Entered**

19.     The Court should deny the Motion because the Involuntary Petition is not reasonably likely to be sustained pursuant to sections 303(h), 707(a) and 305(a) of the Bankruptcy Code.  Rather, as will be set forth more fully in Newbury's motion to dismiss the Involuntary Petition, multiple grounds exist for dismissal of the Involuntary Petition and, therefore, the preliminary question of whether there is a reasonable likelihood that an order for relief will be entered must be answered in the negative.

### _Failure to Satisfy Section 303(h) Requirements_

20.     As an initial matter, the Involuntary Petition must fail based on analysis of section 303(h) of the Bankruptcy Code because, among other reasons, Newbury is generally paying its debts to its trade creditors as they become due except for its debt to the Petitioning Creditor for the reasons set forth herein.  _See_ Smith Declaration, ¶. 9.  Newbury's payment of its debts to its trade creditors means, among other things, that the Petitioning Creditor's use of the bankruptcy court as a collection agency will not provide a collective remedy for a number of creditors but only a remedy for a single party in a two-party dispute.  _See In re Mountain Dairies, Inc._, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007) ("The bankruptcy court is not a collection agency").

8

### *Section 707(a) Dismissal*

21.     Moreover, cause exists to warrant dismissal of the Involuntary Petition pursuant to section 707(a) of the Bankruptcy Code because this proceeding constitutes an improper or duplicative use of the bankruptcy system which should be dismissed by this Court in the exercise of its sound discretion.  *See In re Murray*, 543 B.R. 484, 490-91 (Bankr. S.D.N.Y. 2016, *aff'd* 565 B.R. 527 (S.D.N.Y. 2017), *aff'd* 900 F.3d, 53, 58 (2d Cir. 2018) (cause for dismissal exists "whether for bad faith or circumstances falling short of bad faith but nevertheless representing an inappropriate use of the Code").

22.     With particular attention to (i) whether a petitioning creditor is attempting to collect a debt in a two-party dispute and (ii) whether adequate state court remedies are available when considering dismissal of an involuntary petition, courts in this Circuit consider multiple factors in determining whether cause exists to warrant dismissal of an involuntary petition under section 707(a) of the Bankruptcy Code.   *See In re Murray*, 543 B.R. at 492 (finding that the presence of those two factors alone will "weigh in a favor of dismissal when present").  These factors (the "*Murray* factors") include:

> (1)     The bankruptcy court was the most recent battlefield in a long-running, two party dispute, (2) the judgment creditor brought the case solely to enforce a judgment, (3) there were no competing creditors, (4) there was no need for a pari passu distribution, (5) assuming there were fraudulent transfers to be avoid, the judgment creditor could do so in another forum, ( 6) the judgment creditor had adequate remedies to enforce its judgment under non-bankruptcy law, (7) the judgment creditor invoked the bankruptcy laws to secure a benefit that it did not have under non-bankruptcy law without a creditor community to protect, (8) no assets would be lost or dissipated in the event that the bankruptcy case did not continue and (9) the alleged debtor did not need a bankruptcy discharge.

*In re Murray*, 900 F.3d at 57.

23.     The Petitioning Creditor's tactical use of an involuntary bankruptcy filing to collect a debt in a two-party dispute that is already subject to the pending State Court Action

commenced in the forum designated under the Lease and in which Petitioning Creditor has adequate remedies under non-bankruptcy law is not an appropriate use of the bankruptcy process and constitutes cause for abstention or dismissal. *See Mountain Dairies, Inc.*, 372 B.R. at 636. Indeed, among the relief sought by the Petitioning Creditor in the State Court Action is the appointment of a receiver which would serve the same function as an interim trustee requested in the Motion. *See* 9 COLLIER ON BANKRUPTCY ¶ 2001.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) (explaining "[t]he interim trustee's resemblance to a receiver"). Accordingly, the *Murray* factors which consider the existence of a two-party dispute and an adequate remedy under non-bankruptcy law support dismissal in the instant case.

24. The majority of the remaining *Murray* factors also favor granting dismissal of the Involuntary Petition and denial of the Motion. The Petitioning Creditor is using the bankruptcy court as its most recent battlefield in its long running two-party dispute (*Murray* factor 2). As set forth in ¶9 of the Smith Declaration, there are no competing creditors (*Murray* factor 3) so there is also no need for a *pari passu* distribution of Newbury's assets (*Murray* factor 4). Assuming there are any potential fraudulent transfers to be avoided, the Petitioning Creditor can assert those causes of action in the State Court Action pursuant to the relevant provisions of New York Debtor Creditor Law (*Murray* factor 5). The Petitioning Creditor has adequate remedies to enforce any judgment for breach of its Lease under non-bankruptcy law in the pending State Court Action (*Murray* factor 6). The Petitioning Creditor invoked the bankruptcy laws to secure a benefit - namely relief from the state mandated eviction moratorium imposed post-COVID - that is not available to the Petitioning Creditor in the State Court Action (*Murray* factor 7). Finally, Newbury maintains its books and records in accordance with GAAP (Smith Declaration, ¶2) in the ordinary course of its business so there is no real danger of assets being "lost" or

"dissipated" in the event the bankruptcy case did not continue (*Murray* factor 8) during the pendency of the State Court Action.    Accordingly, cause exists for dismissal under section 707(a) of the Bankruptcy Court.

### *Section 305(a) Abstention and Dismissal*

25.    In addition, cause exists for the Court to exercise its discretion to abstain from hearing this bankruptcy case pursuant to section 305(a) of the Bankruptcy Code and 28 U.S.C § 1331(c).  Section 305(a)(1) of the Bankruptcy Code permits a bankruptcy court to dismiss any bankruptcy case where "the interests of creditors and the debtor would be better served by such dismissal . . ." 11 U.S.C. § 305(a)(1).  While abstention pursuant to section 305 is an extraordinary remedy that is appropriate only when a court finds that both creditors and the debtor would be served by dismissal, abstention in the case at bar is warranted because this case is simply a two-party dispute that is already pending in another forum and the interests of Newbury and its sole creditor would be better served by dismissal.  *See, e.g., In re Persico Contracting and Trucking, Inc.*, 2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug. 20, 2010 ("it is frequently recognized that an involuntary Chapter 11 case, particularly where that involuntary appears to be a two-party dispute; i.e., the petitioning creditors on the one hand and the debtor on the other, should not be used as a debt collection tool"); *In re Selectron Mgmt. Corp.* 2010 WL 3811863, at *6 (Bankr. E.D.N.Y. Sept 27, 2010); *In re Rand Int'l Leisure Prod.*, LLC 2010 WL 2553999 (Bankr. E.D.N.Y. June 18, 2010) (appropriate to abstain if involuntary petition is "essentially the result of an ongoing two-party dispute").

26.    Moreover, a review of the factors that Second Circuit courts have considered regarding abstention or dismissal under section 305(a) of the Bankruptcy Code supports the

continuation of the two parties' pending State Court Action and not this involuntary bankruptcy

case, as follows:

> (1) [the] economy and efficiency of administration; (2) whether another forum is
> available to protect the interests of both parties or there is a pending proceeding in
> state court; (3) whether federal proceedings are necessary to reach a just and
> equitable solution; (4) whether there are alternative means of achieving an
> equitable division of assets; (5) whether the debtor and creditors are able to work
> out a less expensive out-of-court arrangement which better serves all interests in
> the case; (6) whether a non-federal insolvency has proceeded so far in those
> proceedings that it would be costly and time consuming to start afresh with the
> federal bankruptcy process; and the purpose for which bankruptcy jurisdiction has
> been sought.

*In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002).

27.     The Court should find that applicable factors set forth above weigh in favor of

abstention in this matter and denial of the Motion.  The Petitioning Creditor had already chosen

to commence the State Court Action and seek the appointment of a receiver before filing the

Involuntary Petition.  The two parties to this contested matter have appeared in the State Court

Action and a hearing on the Petitioning Creditor's motion for the appointment of a receiver was

scheduled prior to the filing of the Involuntary Petition.  Indeed, consideration of the receiver

motion was adjourned solely due to the filing of the instant case.  Accordingly, it would

inefficient for this Court and the parties herein to utilize scarce judicial resources to duplicate the

efforts that have already expended by the state court and the parties in the State Court Action.

Moreover, the Petitioning Creditor has not supported its arguments with any evidence to even

suggest that the State Court Action or the remedies available therein are somehow inadequate.

### *28 U.S.C. § 1334 Permissive Abstention*

28.     Finally, the Court should also deny the Motion because there are grounds for

permissive abstention from this case pursuant to 28 U.S.C. § 1334(c)(1) based on the Court's

review of the applicable factors.   In determining whether permissive abstention under section

1334(c)(1) is appropriate, Second Circuit courts have considered the following factors:

> (1) The effect or lack thereof on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed defendants.

*In re Residential Capital, LLC*, 488 B.R. 565, 577 (Bankr. S.D.N.Y. 2013).

29.     For the same reasons set forth above (*see* supra, ¶ 27), the first factor weighs in

favor of abstention.   The second factor regarding the extent to which issues of state law

predominate also weighs in favor of abstention because the issues to be addressed between the

two parties are predominantly questions of state law regarding commercial leases, New York's

Debtor and Creditor Law and the appointment of receiver under the New York CPLR.    The

Petitioning Creditor has not identified any significant bankruptcy issues that could be better

addressed by this Bankruptcy Court as opposed to the New York State Supreme Court.   Comity

considerations also weigh in favor of abstention.  The record demonstrates that there is a pending

state court proceeding which will apply New York state law, and any relief required by the

parties can be obtained in that forum.   Finally, the last two factors regarding relatedness or

remoteness of the State Court Action from this case and the right to a jury trial also weigh in

favor of this Court's abstention from the bankruptcy case which would accomplish no purpose

that cannot be achieved in the State Court Action.

30.     Second Circuit courts have also examined additional factors when considering

permissive abstention, "including the presence of a related proceeding commenced in state court

or other non-bankruptcy court" and "the likelihood that commencement of the proceeding in a

bankruptcy court involves forum shopping by one of the parties."   *See Little Rest Twelve, Inc.,*

458 B.R. 44, 60 (S.D.N.Y.2011) (internal citations omitted).    These two factors clearly favor

Newbury because the exact same dispute between the same parties seeking the same relief is the

subject of the pending State Court Action and Petitioning Creditor is blatantly and obviously

engaging in forum shopping.

31.    Accordingly, since substantially all of the factors considered by the courts in the

Second Circuit weigh in favor of dismissal of the Involuntary Petition under the various

standards summarized above, as will be set forth more fully in Newbury's motion to dismiss the

Involuntary Petition, the Court should deny the instant Motion because it is not reasonably likely

that an order for relief will be entered against Newbury in this case.

**B.    The Appointment of an Interim Trustee is Not Necessary to Preserve or Protect the Putative Debtor's Estate**

32.    Newbury further submits that the Motion must also be denied because the

Petitioning Creditor has utterly failed to meet its burden of proving that the appointment of an

interim trustee is "necessary to preserve the property of the estate or to prevent loss to the estate"

within the meaning of section 303(g) of the Bankruptcy Code.  *See Diamondhead Casino Corp.*,

540 B.R. at 507 (denying motion for interim trustee because "the Petitioning Creditors have not

met their burden to show that the extraordinary relief of an interim trustee during the gap period

is appropriate").    Here, the Petitioning Creditor relies solely on unsupported conclusory

allegations to support its request for an interim trustee.  Indeed, while the Motion alleges that the

record is "replete with evidence" of siphoning of assets (Motion, ¶ 19), in fact the allegations in

the Pretsfelder Affidavit in support of this claim are entirely unsupported and made upon

information and belief.  *See* Motion, Ex. A, ¶4.  There is no evidence that any property will be

lost or otherwise not preserved pending a determination of the Involuntary Petition.

14

33.     On the record before the Court, the Petitioning Creditor has not met its burden of proving the need for the appointment of an interim trustee which, if appointed, would be disruptive to operations at the Garage and have potentially deleterious impacts on the business, including the incurrence of unnecessary costs.   Accordingly, given the Petitioning Creditor's failure to prove "an exceptionally strong need for [the request for an interim trustee], the Motion should be denied.  *See In re Levin*, 2011 WL 1469004, at *2-3 (Bankr. S. D. Fla. April 15, 2011)). (denying request for appointment of trustee based on failure to show necessity and substantial administrative expense that would be incurred with "no evidence that such costs will be outweighed by any benefit or prevention of loss to the estate").

**C.     If an Interim Trustee is Appointed the Petitioning Creditors Must Post a Substantial Bond**

34.     Notwithstanding the foregoing, if the Court determines that an interim trustee must be appointing pending resolution of the Involuntary Petition and Newbury's anticipated motion to dismiss the Involuntary Petition, a substantial bond is necessary to protect Newbury from the harm such disruption to operations would cause.

35.     In the event an interim trustee is appointed, Bankruptcy Rule 2001(b) requires that the movant post a bond to indemnify the debtor for, among other things, costs and attorneys' fees incurred in defending against the motion.  *See* Bankruptcy Rule 2001(b) ("An interim trustee may not be appointed unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses and damages allowable under § 303(i) of the Code.").

36.     While the Motion is conspicuously silent on the mandatory requirement of a bond, Newbury submits that any bond must be adequate to indemnify Newbury for its costs and

other damages sustained as a result of the Involuntary Petition, which costs Newbury intends to seek in its motion to dismiss the Involuntary Petition.

## **CONCLUSION**

37.    Newbury submits that the Motion should be denied because the Petitioning Creditor has failed to provide the factual and legal support required to warrant the imposition of the draconian remedy of the appointment of an interim trustee pending a determination of the Involuntary Petition.   Instead, the Petitioning Creditor is improperly attempting to use the Bankruptcy Court as a collection agency for its two-party dispute in abrogation of well-settled Second Circuit law, and for the reasons set forth herein it is not reasonably likely that an order for relief will be entered.   Accordingly, given the fact that the Involuntary Petition is likely to be dismissed and the Petitioning Creditor has failed to provide any substantial risk of loss to the estate that would necessitate the appointment of an interim trustee, the Motion should be denied.

## **RESERVATION OF RIGHTS**

38.    Newbury respectfully reserves and any all rights with respect to the subject matter of the Motion, this Objection and any motion to dismiss or other response to the Involuntary Petition, including without limitation the right to supplement this Objection on the record of the hearing to be held on the Motion and to assert other and additional defenses to the Involuntary Petition.

**WHEREFORE**, Newbury requests that the Court deny the Motion for the reasons set forth in this Objection and grant such other and further relief as may be just and proper under the circumstances.

Dated: Garden City, New York
       January 12, 2021                 CULLEN AND DYKMAN LLP

                    By:    */s/ Elizabeth M. Aboulafia*
                          C. Nathan Dee, Esq.
                          Elizabeth M. Aboulafia, Esq.
                          100 Quentin Roosevelt Boulevard
                          Garden City, New York 11530

                          *Counsel to Newbury Operating LLC*

17

## **Exhibit A**

*Smith Declaration*

CULLEN AND DYKMAN LLP
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
Email: ndee@cullenllp.com
         eaboulafia@cullenllp.com

*Counsel to Newbury Operating LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :
In re:                                        :    Chapter 7
                                              :
NEWBURY OPERATING LLC                         :    Case No. 20-12976 (JLG)
                                              :
                                              :
              Alleged Debtor.                 :
                                              :
-------------------------------------------------------------x

**DECLARATION OF JOHN D. SMITH IN SUPPORT OF
NEWBURY OPERATING LLC'S OBJECTION TO THE MOTION FOR
APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE AND MOTION TO
DISMISS OR FOR ABSTENTION**

Under 28 U.S.C. § 1764, John D. Smith declares as follows under the penalty of perjury:

1.      I am the Chief Executive Officer of Icon Parking Holdings, LLC ("Icon") the indirect parent and manager of Newbury Operating LLC ("Newbury"), the alleged debtor against which an involuntary petition (the "Involuntary Petition") for relief under chapter 7 of the Bankruptcy Code was filed by 250 E. 87 Owners Corp. (the "Petitioning Creditor" or "Landlord") on December 28, 2020.

2.      I am authorized to submit this declaration (the "Declaration") on behalf of Newbury in support of Newbury's objection (the "Objection") to the *Motion for Appointment of*

*Interim Chapter 7 Trustee* (the "Motion" at Dkt. No. 7)[1] and the granting of Newbury's *Motion to Dismiss Involuntary Bankruptcy Petition or, Alternatively, for Abstention* (the "Motion to Dismiss").

3.      As a result of my tenure with Icon, my review of public and non-public documents, and my discussions with other members of Icon's management team, I am generally familiar with Newbury's business, financial condition, day-to-day operations and books and records.  Except as otherwise indicated, all facts set forth in this Declaration are based upon personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning Newbury's operations.  References to the Bankruptcy Code, the bankruptcy process, and related legal matters are based on my understanding of such matters and advice provided to me by counsel.   If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## A.      The Lease and Impact of COVID-19 Pandemic

1.      On or around December 31, 2012, Newbury entered into the Lease with the Petitioning Creditor pursuant to which Newbury became authorized to operate a parking garage located in the building situated on land known as 250 E. 87th Street, New York, New York (the "Garage").   Under earlier iterations of the Lease, Newbury or its predecessor-in-interest has been operating the Garage since 1997.

2.      The Garage is operated as an Icon Parking branded garage and Newbury is among the subsidiary entities operated as part of Icon Parking.  As part of this arrangement, Icon provides Newbury with management and administrative services to support the operation of the Garage.  Icon maintains accurate books and records in the ordinary course of business utilizing

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Objection, as applicable.

accounting methodologies that are in accordance with GAAP.  Approximately six individuals work at the Garage and they are members of the Garage Employees Union Local No. 272; Icon is responsible for payment of union benefits and dues on Newbury's behalf.

3.      As noted in the documents filed by the Landlord in support of their Motion, Newbury made payment of rent under the Lease on a monthly basis without exception prior to the onset of the COVID-19 pandemic in March 2020.  Historically, Newbury operated the Garage with little to no profit, generally achieving close to "break even" status at the end of any given year.

4.      With the onset of COVID-19 in March 2020 and resulting government-mandated closure of all non-essential businesses, Newbury's financial situation worsened significantly. Many New Yorkers lost their jobs or were subject to furloughs, and those who still had jobs were, with few exceptions, working remotely.  More so than other major U.S. cities, New York experienced a mass exodus with hundreds of thousands of New Yorkers leaving the City during the spring and summer of 2020.   By and large, New Yorkers and commuters from neighboring locales had no need for transient parking.

5.      As a result, Newbury experienced a precipitous decline in revenues, thus impairing its ability to pay its operating expenses, including rent owed under the Lease.  In the first several months of the pandemic, Newbury's business decreased by more than 25%.

6.      Through a series of executive orders signed by Governor Cuomo on March 20, 2020 and since extended from time to time, the State of New York instituted a moratorium on commercial evictions in recognition of the financial toll that the COVID-19 pandemic has taken on commercial tenants such as Newbury with the stated purpose of allowing commercial tenants additional time to get back on their feet and renegotiate lease terms.

3

7.      In April 2020, Newbury suspended rent payments while assessing the impact the pandemic would have on revenue.  When it became clear the impact would be significant, Newbury attempted to negotiate some rent relief with the Landlord to reflect the situation. Newbury made several efforts of the past nine months to resolve the dispute, but to no avail.

8.      On October 21, 2020, the Landlord drew down on a letter of credit that it was holding as security under the Lease in the amount of $196,875.00, thus reducing the arrearages due to it under the Lease.  The letter of credit issuing bank thereafter demanded and obtained reimbursement from Icon for such sums which have been paid.

9.      Newbury has generally remained current on its other obligations to trade vendors that service the Garage.  As of December 28, 2020, the date the Involuntary Petition was filed, Newbury's only creditor was the Landlord.

**B.      Landlord's State Court Action and Pending Request for Receiver**

10.      Unfortunately, the negotiations with the Landlord have not been successful and the Landlord instead chose to file the State Court Action in October 2020 seeking to recover the unpaid rent from Newbury.  Newbury has filed an answer in the State Court Action.

11.      The Landlord has also chose to move for the appointment of a receiver in the State Court Action in an effort to work an end-run around the protections put into place by Governor Cuomo.  On December 22, 2020, Newbury filed an opposition to the motion to appoint a receiver.  The Court scheduled a hearing on the receiver motion for January 12, 2021.

12.      Days after Newbury submitted its opposition to the receiver motion, the Landlord filed the Involuntary Petition and the Motion.  I understand from discussions with counsel that the interim bankruptcy trustee requested in the Motion is very similar to a receiver, and it appears that the Landlord is simply trying again to short circuit the eviction moratorium and take

possession of the Garage.  I also understand from discussions with counsel that the only reason the receiver motion is not being heard this week in the State Court Action is because the Landlord filed a letter notifying the court of the automatic stay resulting from the filing of the Involuntary Petition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of January, 2021.

NEWBURY OPERATING LLC

By: /s/ John D. Smith
     John D. Smith