**ROSEN & ASSOCIATES, P.C.**
*Counsel to 250 E. 87 Owners Corp.*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NEWBURY OPERATING LLC,<br><br>　　　　　　　　　　　Alleged Debtor. | Chapter 7<br><br>Case No. 20–12976 (JLG) |

**REPLY TO OBJECTION TO MOTION FOR**
**APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE**

　　　　　250 E. 87 Owners Corp., petitioning creditor and party-in-interest (the "**Co-Op**"), through its counsel, Rosen & Associates, P.C., as and for its reply (the "**Reply**") to the *Objection of Newbury Operating LLC to the Motion for Appointment of Interim Chapter 7 Trustee* [Doc. No. 13] (the "**Objection**") filed by Newbury Operating LLC (the "**Alleged Debtor**"), and in further support of the *Motion for Appointment of Interim Chapter 7 Trustee* [Doc. No. 7] (the "**Motion**")[1], respectfully represent as follows:

**PRELIMINARY STATEMENT**

　　　　　1.　　Although the Alleged Debtor would have this court believe that the dispute with the Co-Op is nothing more than an eviction proceeding that belongs in state court, what the Objection fails to mention is that the Lease has long been terminated by the Alleged Debtor's breach.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2. The Co-Op commenced this case, not to "short circuit the protections … expressly implemented for … commercial tenants in the wake of the ongoing pandemic (OBJ. p.1), but rather to prevent further dissipation of assets and to enable an independent fiduciary to secure the Alleged Debtor's books and records, and investigate and pursue avoidable and fraudulent transfers and breach of fiduciary duty claims, most of which are only available to a trustee, for the benefit of all creditors and parties-in-interest to the estate.

3. By the Alleged Debtor's own admission, it has been a money loosing enterprise even before the pandemic, and now is hopelessly insolvent and cannot pay its debts as they become due. *See* OBJ'N. ¶¶ 3-6.

4. The Alleged Debtor's attempt to continue to cover up its avoidable transfers and thwart the Co-Op's efforts to install a trustee to investigate its financial affairs and wind down its business in an orderly manner, should not be condoned by this Court.

## FACTUAL ALLEGATIONS

### A. The Terminated Lease

5. Despite the Alleged Debtor's assertions to contrary, the Lease has been terminated by virtue of a conditional limitation long before this case was commenced. The Co-Op sued the Alleged Debtor in the Supreme Court of the State of New York, seeking a money judgment for amounts then due under the Lease, but the Alleged Debtor failed to timely respond to the complaint. Only after moving for the appointment of a receiver did the Alleged Debtor serve an answer, which the Co-Op has rejected as untimely.

6. The Alleged Debtor failed to cure its default after notice was given and the Co-Op subsequently issued a notice of termination of the Lease. Thus, the Lease would not be an asset of the Alleged Debtor's estate, and it is axiomatic that the Bankruptcy Court is powerless to

resuscitate an expired lease. *See In re Seven Stars Restaurant, Inc.*, 122 B.R. 213 (S.D.N.Y. 1990) (debtor-tenant was not entitled to cure defaults and resurrect terminated lease where landlord had terminated lease prepetition, after debtor failed to cure defaults subsequent to fifteen-day cure notice issued by landlord); *In re Reinhardt*, 209 B.R. 183 (Bankr. S.D.N.Y. 1997); *In re S.E. Nichols Inc.,* 120 B.R. 745 (Bankr. S.D.N.Y. 1990).

7. Therefore, the Alleged Debtor has no interest susceptible of assumption under the Bankruptcy Code and it is pre-ordained that the Alleged Debtor will be compelled to surrender the premises and vacate the Garage. This case is clearly about how long the Alleged Debtor can maneuver to remain in control of its cash at the expense of the Co-Op and any other creditor, so that it can continue to divert the cash for its own account.

B. **The Timing of the Involuntary Petition**

8. As outlined herein, the Co-Op filed the petition and moved for an interim trustee upon learning that the Alleged Debtor may very well be systematically dissipating estate assets (*i.e.,* cash receipts from operating the Garage) not because the Co-Op was "presumably disappointed with its prospects for success [in State Court]." *See* OBJ'N. ¶ 20.

### DISCUSSION

I. **THERE IS A SUBSTANTIAL RISK OF LOSS TO THE ESTATE IF AN INTERIM TRUSTEE IS NOT APPOINTED**

9. The Alleged Debtor argues that the Motion should be denied because the Co-Op has failed to put forth any factual or legal basis to support the extreme remedy of appointment of an interim trustee pending a determination of the involuntary petition. *See generally* OBJ'N.

10. The basis of the allegation of systematic dissipation of assets is premised upon the Co-Op's information and belief that the Alleged Debtor is not retaining its cash receipts,

but rather is remitting them to affiliated entities. Notwithstanding the strength of this strong inference, the Co-Op indeed does not know that for a fact. However, in accordance with part VII of the Federal Rules of Bankruptcy Procedure which govern this contested matter, the Co-Op is entitled and intends to take limited pre-trial discovery in the form of a deposition of Mr. Smith.

11. Noteworthy however is that the Alleged Debtor neither denies that its cash receipts have been dissipated, nor articulates the whereabouts of the cash it failed to disburse on account of rent or otherwise claim that it was used to satisfy its other payment obligations. Rather, the Alleged Debtor argues that there is no real danger of assets being "lost" or "dissipated" because the Alleged Debtor "maintains its books and records in accordance with GAAP in the ordinary course of its business…" *See* SMITH DECL. ¶2. While accurate books and records may disclose the whereabouts of the cash, maintaining them has nothing to do with ensuring that the cash was not dissipated in the first place and will not be dissipated in the future.

II. **THERE IS A REASONABLE LIKELIHOOD THAT THE BANKRUPTCY COURT WILL ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7 OF THE BANKRUPTCY CODE AGAINST THE ALLEGED DEBTOR**

   A. **The Alleged Debtor is Not Generally Paying its Debts as They Become Due**

12. The Alleged Debtor argues that the petition will be dismissed because it is "generally paying its debts to its trade creditors as they become due except for its debt to the [Co-Op] for the reasons set forth herein." *See* OBJ'N. ¶ 20.

13. However, this is not the test. Section 303(h)(1) of the Bankruptcy Code provides in relevant part that "after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

> the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount

4

11 U.S.C. § 303(h).

14. The statute allows for no exceptions—either the debtor is generally not paying <u>all</u> such debtor's debts as such debts become due or the debtor is. Here, there is no bona fide dispute as to liability or amount of the Co-Op's claim, which is determined by simply calculating the rent due under the Lease.

15. Here, the Alleged Debtor claims that it has generally remained current on its other obligations to trade vendors that service the Garage, and as of December 28, 2020, the date the Involuntary Petition was filed, its only creditor was the Co-Op, apparently singling out the Co-Op as the only creditor to shoulder the burden of its financial distress. *See* SMITH DECL. ¶ 9

16. However, in determining whether the Alleged Debtor is generally not paying its debts as they become due, the Bankruptcy Court considers not only the number of creditors that are unpaid, but **the proportion of debt that remains unpaid**. *See In re: All Media Properties, Inc.*, 5 B.R. 126 (Bankr. S.D. Tex. 1980) (Generally not paying debts, in respect to an involuntary bankruptcy petition, includes regularly missing a significant number of payments to creditors or regularly missing payments **which are significant in amount in relation to the size of the debtor's operation**) (emphasis added); *In re: Concrete Pumping Service,* Inc., 943 F.2d 627 (6th Cir. 1991); *see also Matter of Bowers,* 16 B.R. 298 (Bankr. D. Conn. 1981); *Matter of Hill,* 5 B.R. 79 (Bankr. D. Minn. 1980); *Matter of International Teldata Corp.,* 12 B.R. 879 (Bankr. D. Nev. 1981) (debt that represents 90% of the debtor's total indebtedness constitutes failure to "generally" pay debts as they become due … even if the debtor is not in default to its other creditor).

17. Here, unlike the very other few trade creditors and payroll, the Co-Op constitutes the Alleged Debtor's singular substantial creditor. Unlike the facts in the cases cited in the OBJ., there are no third- party suppliers of goods and services whose claims would compete with the Co-Op's. Thus, the Co-Op submits that there is no question that the Alleged Debtor is generally not paying its debts as they become due.

### B. Special Circumstances Justify the Filing of the Involuntary Petition by the Co-Op

18. Assuming the Co-Op is the Alleged Debtor's only creditor (an allegation to be tested in discovery), it follows that there is no other party whose rights are implicated by the bankruptcy case. However, the two-party nature of the case is, in and of itself, no reason to deny Co-Op's Motion, as the Bankruptcy Code expressly provides that a single creditor may prosecute an involuntary petition. *See* 11 U.S.C. § 303; *see also In re Byrd*, 357 F.3d 433, 436 (4th Cir. 2004) (Bankruptcy Code permits a single creditor to commence an involuntary case against a debtor); *In re Norris*, 183 B.R. 437, 460 (Bankr. W.D. La. 1995); *In re B.D. Int'l Discount Corporation*, 13 B.R. 635, 639-40 (Bankr. S.D.N.Y. 1981), *aff'd* 701 F.2d 1071 (2d Cir. 1983), *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed. 2d 110 (1983) (holding that case was ripe for appointment of a trustee and deserved bankruptcy administration even if there was only one creditor).

19. Moreover, Courts have generally held that, under 11 U.S.C. § 303(h)(1), even a single creditor may establish a case for involuntary bankruptcy with only proof of a default in respect to a debt when either: (i) an exceptional case exists of a debtor with a sole creditor who would otherwise be without an adequate remedy under state or federal law, other than bankruptcy law, if denied an order for relief; or (ii) upon a showing of special circumstances amounting to fraud, trick, artifice or scam is made. *In re: 7H Land & Cattle Co.,* 6 B.R. 29 (Bankr. D. Nev. 1980); *In re Evans,* 1997 Bankr. LEXIS 1073, *15 (Bankr. E.D. Va. June 6, 1997); *In re Concrete*

6

*Pumping Serv., Inc.,* 943 F.2d 627, 630 (6th Cir. 1991); *In re B.D. Int'l Discount Corp.,* 13 B.R. 635, 638 (Bankr. S.D.N.Y. 1981); *In re: Moss,* 249 B.R. 411 (Bankr. N.D. Tex. 2000).

20. Here, both exceptions apply that warrant the filing of this case.

21. First this case is not, as the Alleged Debtor would have this Court believe, a debt collection tool for which there is an adequate remedy in state court. The Co-Op filed the petition and moved for an interim trustee upon learning that the Alleged Debtor may be systematically dissipating estate assets (*i.e.,* cash receipts from operating the Garage) not because the Co-Op was "presumably disappointed with its prospects for success [in State Court]." *See* OBJ'N. ¶ 20.

22. As discussed above, the Motion was made to prevent the further dissipation of assets by the appointment of a chapter 7 trustee and to enable the trustee to prosecute claims of the estate for the recovery of dissipated assets and for breaches of fiduciary duties by officers and directors of the Alleged Debtor. These purposes are far-beyond the powers of a state court receiver. *See In re Norriss Bros. Lumber Co.,* 133 B.R. 599, 608 (Bankr. N.D. Tex. 1991) (purported fraudulent conveyances and preferential transfers constituted special circumstances); *In re H.I.J.R. Properties Denver,* 115 B.R. 275, 278 (Bankr. D. Colo. 1990) (possible recovery of preferential transfer under 11 U.S.C. § 547 justified single creditor involuntary petition).

23. Second, although the Alleged Debtor argues at some length that it is a victim of COVID-19, and that, with the onset of COVID-19 in March 2020, its financial situation worsened significantly and experienced a, "precipitous decline in revenues, thus impairing its ability to pay its operating expenses, including rent owed under the Lease (SMITH DECL. ¶ 9), the Alleged Debtor's COVID-19 related distress is not as severe as it would have this court believe.

24. The Alleged Debtor provided the Co-Op with an Income Statement for the five months ending May 31, 2020, a copy of which is attached hereto as *Exhibit A*. Indeed, the Income Statement shows that, only ***after giving effect to the payment of rent,*** did the Alleged Debtor operate at a break even for the period. The cash receipts were clearly available to pay most, if not all, of the rent as and when due but the Alleged Debtor simply chose not to do so. The Co-Op submits that absent the appointment of an interim trustee, a clear and present risk the Alleged Debtor will continue to dissipate cash to the detriment of the estate constitutes "special circumstances" that warrant the both the filing of this case and the appointment of an interim trustee.

### C. *MURRAY* FACTORS WEIGH AGAINST DISMISSING THE PETITION

25. The Alleged Debtor also incorrectly argues that cause exists dismiss the petition pursuant to section 707(a) of the Bankruptcy Code because this proceeding constitutes an improper or duplicative use of the bankruptcy system. An application of the so-called *Murray* factor's do not weigh in favor of dismissing the petition: (1) this is not a long-running, two party dispute, (2) the Co-Op did not file the petition solely to enforce a judgment, (3) there may be competing creditors, (4) there may be a need for a *pari passu* distribution, (5) the Co-Op cannot prevent the Alleged Debtor from dissipating assets in another forum, (6) assets would be lost or dissipated in the event that the bankruptcy case did not continue, and (7) the Co-Op did not, as the Alleged Debtor argues, invoke the bankruptcy laws to evict the Alleged Debtor, notwithstanding the state mandated eviction moratorium imposed post-COVID.

### III. ABSTENTION IS UNWARRANTED

26. While it is true that the Court may abstain from hearing a two-party dispute pursuant to section 305 of the Bankruptcy Code, "abstention is an extraordinary remedy that should

be used sparingly" and only "under extraordinary circumstances" *See In re Schur Mgmt. Co., Ltd.,* 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005); *In re Paper I Partners, L.P.,* 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002); *see also In re Corino,* 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995); *In re Luftek, Inc.,* 6 B.R. 539, 548 (Bankr. E.D.N.Y. 1980)).

27. Here, abstention under section 305(a) of the Bankruptcy Code would be inappropriate because it would be adverse to the interests of the Co-Op. Indeed, the bankruptcy is essential to achieving a just and equitable resolution of the issues.

28. Nor would abstention be appropriate under 28 U.S.C. § 1334(c)(1). Abstaining would be adverse to the efficient administration of the bankruptcy estate because the process of investigating and prosecuting estate claims would be most efficiently undertaken before this Court; (2) bankruptcy law would predominate with respect to the prosecution of the estate's avoidance claims, which would constitute the principal assets of the estate (3) applicable state law would play little if any role in the bankruptcy case; and (4) the investigation and prosecution of estate claims would be the hallmark of the bankruptcy case.

29. In short, the Alleged Debtor offers no compelling reason why the Court should abstain and the Co-Op is not attempting to drag an otherwise-viable going concern into chapter 7. Rather, the Alleged Debtor is an insolvent entity that has engaged in questionable transactions that left it without sufficient assets to pay its creditors in full—exactly the type of case that begs for a chapter 7 trustee.

## **CONCLUSION**

30. In light of the foregoing, the Co-Op respectfully requests that the Court enter an Order granting the Motion and denying the Objection in its entirety.

Dated: New York, New York
       January 13, 2021

                **ROSEN & ASSOCIATES, P.C.**
*Counsel to 250 E. 87 Owners Corp.*

By: /s/ *Sanford P. Rosen*
      Sanford P. Rosen
      Paris Gyparakis

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100