*Hearing Date: February 18, 2021*
*Time: 10:00 a.m. (prevailing Eastern Time)*

**ROSEN & ASSOCIATES, P.C.**
*Counsel to 250 E. 87 Owners Corp.*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NEWBURY OPERATING LLC,<br><br>　　　　　　　　　　　Alleged Debtor. | Chapter 7<br><br>Case No. 20–12976 (JLG) |

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS INVOLUNTARY**
**BANKRUPTCY PETITION OR, ALTERNATIVELY, FOR ABSTENTION**

250 E. 87 Owners Corp., petitioning creditor ("**Petitioner**" or the "**Co-Op**"), through its counsel, Rosen & Associates, P.C., as and for its response (the "**Response**") in opposition to *Newbury Operating LLC's Motion to Dismiss Involuntary Bankruptcy Petition or, Alternatively, for Abstention* [Doc. No. 17] (the "**Dismissal Motion**") filed by Newbury Operating LLC (the "**Alleged Debtor**"), respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.　Through its Dismissal Motion, the Alleged Debtor goes to great lengths to describe this as a two-party dispute, "filed solely to collect rent" as to which Petitioner has an adequate remedy in state court. *See* DISMISSAL MOT. p. 5. But this mischaracterization of the events precipitating the commencement of this case, is simply a convenient story line designed to shelter

itself from the entry of an order for relief by fitting comfortably in fact patterns of cases that support dismissal.

2. The Alleged Debtor seeks dismissal, not to continue the litigation of the State Court Action[1] with an eye towards somehow reviving the lease and preserving its rights; but rather, for the sole purpose of continuing to divest itself of operating revenue for the benefit of its affiliated entities through a centralized cash management system that is little more than a fraudulent conveyance mechanism. To dismiss for this purpose would be at odds with all the cases the Alleged Debtor relies upon and an affront to this Court's purpose as a court of equity.

3. As articulated by Judge Lifland:

> the involuntary petition ensure[s] that earnest creditors promptly receive all of the rights and protections afforded by the bankruptcy laws, lest the assets of the estate be squandered and secreted away by a financially troubled or dishonest debtor

*Matter of B. D. Intern. Discount Corp.,* 15 B.R. 755 (1981) (*citing* REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES (1973) Part I at 186).

4. Thus, and for all the reasons outlined below, the Dismissal Motion must be denied.

### FACTUAL & PROCEDURAL BACKGROUND

**A.    The Terminated Lease**

5. Petitioner is a cooperative housing corporation, duly incorporated and existing under the laws of the State of New York, and the owner of certain real property located at 250 East 87th Street, New York, New York (the "**Building**").

---

[1] As defined in the Dismissal Motion

6. Upon information and belief, the Alleged Debtor is a limited liability company, duly authorized to conduct business within the State of New York, with a principal place of business within the City and State of New York.

7. Since 2013, the Alleged Debtor has occupied the parking garage area of the Building (the "**Garage**"), pursuant to a lease agreement dated December 31, 2012 (the "**Lease**") by and between Petitioner, as landlord, and the Alleged Debtor, as tenant, for the parking and storage of passenger motor vehicles, and bicycles, car sharing and electronic car charging, for a term commencing on January 1, 2013 and expiring on December 31, 2024.

8. The Alleged Debtor has failed to pay rent for the Garage since April of 2020, although it has continued, without interruption, to conduct business in the ordinary course. Indeed, during the pandemic, the Alleged Debtor received monthly parking fees from its approximately two hundred twenty (220) monthly customers who pay between $325 and $425 per month. *See Motion for Appointment of Interim Chapter 7 Trustee* [Doc. No. 7] (hereinafter, the "**Trustee Motion**") ¶ 5; *Pretsfelder Affidavit* [Doc. No. 7-1] ¶ 11.

9. Petitioner sued the Alleged Debtor in the Supreme Court of the State of New York, seeking a money judgment for amounts then due under the Lease, but the Alleged Debtor failed to timely respond to the complaint. Only after moving for the appointment of a receiver did the Alleged Debtor serve an answer, which Petitioner rejected as untimely. *See Pretsfelder Aff.* [Doc. No. 7-1] ¶¶ 5-9.

10. As a result of the Alleged Debtor's breach of the Lease, Petitioner—which relies on the rent the Alleged Debtor is obligated to pay under the Lease to satisfy its own monthly payment obligations—has been unduly burdened and its ability to conserve, maintain and preserve the Building has been compromised. *See id.* ¶¶ 11-13.

11. Thus, on December 28, 2020 (the "**Petition Date**"), Petitioner commenced this case by filing an involuntary petition for relief (the "**Involuntary Petition**") against the Alleged Debtor under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

12. On January 8, 2021, Petitioner filed the Trustee Motion and, pursuant to the *Order Granting Ex Parte Motion to Shorten Notice Period and Schedule Expedited Hearing on Motion for Appointment of Interim Chapter 7 Trustee* [Doc. No. 9], a hearing was held on the Trustee Motion on January 14, 2021.

13. The parties have since agreed to resolve the Trustee Motion pursuant to a stipulation and order whereby the Alleged Debtor has agreed that pending the entry of an order adjudicating the Involuntary Petition, it would maintain the suspension of recurring cash sweeps which suspension was initiated on or about January 15, 2021; provided, however, the Alleged Debtor would make disbursements from revenue to satisfy its ordinary course operating expenses payable during the period of January 15, 2021 through and including the date of the entry of an order adjudicating the Involuntary Petition.

14. The Alleged Debtor further agreed that within five (5) business days of entry of the stipulated order, funds swept from its account from December 29, 2020 through January 15, 2021 would be returned to the Alleged Debtor, net of the Alleged Debtor's ordinary course operating expenses payable during that period, and such funds would remain in the Alleged Debtor's bank account pending the entry of an order adjudicating the Involuntary Petition.

15. On January 19, 2021, the Alleged Debtor filed the Dismissal Motion, disingenuously claiming that this case was filed as some sort of litigation tactic. As discussed

below, the only "tactic" here is the Alleged Debtor's "cash management system" designed to fraudulently convey assets to related entities under the guise of a sophisticated cash management system for its indirect parent–the Icon Parking Holdings LLC ("**Icon**").

### B.   The Alleged Debtor's Cash Management System

16. According to the *Supplemental Declaration* of John D. Smith (the "**Smith Declaration**"), the CEO of Icon, submitted in support of the Dismissal Motion as Exhibit 2, the Alleged Debtor is a participant in a cash management system administered by Icon, whereby all of the Alleged Debtor's cash is swept daily into a centralized funding account and, as part of its administrative services rendered to the Alleged Debtor as well as other affiliated garage entities, Icon purportedly disburses funds in payment of the Alleged Debtor's obligations, including, for example, payroll, insurance, and rent. *See* SMITH DECL. ¶¶ 4-7 ("Icon utilizes a centralized and integrated cash management system which provides established mechanisms for the collection, management, and disbursement of funds used in the operation of the parking garage entities…").

17. The Smith Declaration also states that that during the 20-day period from December 28, 2020 to January 16, 2021, the Alleged Debtor generated $96,247.83 in revenue and paid $16,402.44 in expenses excluding rent. *See id.* ¶ 8. Thus, during that period, approximately $70,000 was swept, but not disbursed on behalf of the Alleged Debtor.

18. On January 15, 2021, apparently in response to Petitioner's Trustee Motion, Mr. Smith directed that the daily sweep from the Debtor's bank account be turned off. *See id.* ¶ 9.

19. Petitioner believes that what occurred during the period of December 28, 2020 to January 16, 2021, is illustrative of the disposition of the Alleged Debtor's revenue since it stopped paying rent. In other words, through the daily sweeps, the Alleged Debtor has regularly and systematically been remitting to Icon an amount of revenue sufficient to pay most, if not all,

5

of its rent, but Icon has not paid the rent. Instead, the funds were deposited into the so-called "paymaster account" and intermingled with the funds of other of Icon's garage entities.

20. Petitioner believes this systematic sweep of the Alleged Debtor's revenue coupled with the failure to remit the proceeds in payment of rent to be a systematic fraudulent conveyance of the Alleged Debtor's property at the expense of Petitioner, and thus, absent the entry of an order for relief, the Alleged Debtor will continue in its quest to divert its assets.

21. Thus, Petitioner filed the Involuntary Petition and moved for an interim trustee: (i) to prevent the further dissipation of assets through the service of a chapter 7 trustee; and (ii) enable the trustee to prosecute claims of the estate for the recovery of dissipated assets and for breaches of fiduciary duties by officers and directors of the Alleged Debtor. These purposes are well beyond the powers of a state court receiver and implicate core bankruptcy matters that can only be addressed in this Court. The Alleged Debtor's arguments to the contrary should be rejected.

## DISCUSSION

### I. THE INVOLUNTARY PETITION SATISFIES SECTION 303(h) OF THE BANKRUPTCY CODE

22. Under section 303(h)(1) of the Bankruptcy Code, when a petition is timely controverted, "the court shall order relief against the debtor in an involuntary case ... [only if] the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." *See* 11 U.S.C. § 303(h).

#### A.  Petitioner's Claim is Not the Subject of a Bona Fide Dispute

23. Petitioner is now owed over $900,000 and even the Alleged Debtor concedes that the claim is not subject to a bona fide dispute. *See* 11 U.S.C. § 303(b)(1); *see also In re Onyx Telecommunications, Ltd.*, 60 B.R. 492, 495 (Bankr. S.D.N.Y. 1985) ("This court is of

6

the opinion that the mere existence of a proceeding in another court in which the Debtor has filed an answer generally denying the allegations of the complaint and asserting assorted affirmative defenses and counterclaims, while concededly establishing the existence of a dispute, ***does not as a matter of law***, without more, establish the existence of a "bona fide" dispute.") (emphasis added); *In re Bimini Island Air*, 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007) (finding debtor's mere desire not to pay debts insufficient to create a bona fide dispute as to amount or liability).

24. The only issue before this Court is whether or not the Alleged Debtor is "generally paying its debts as they become due."

### B. There is No Dispute That the Alleged Debtor is "Generally Not Paying its Debts as They Become Due"

25. The Alleged Debtor argues that it is "generally paying its debts to its trade creditors as they become due except for its debt to [Petitioner] for the reasons set forth herein." *See* DISMISSAL MOT. ¶ 35. However, as discussed below, that is not the test.

26. Notably, the Alleged Debtor does not deny the fact that Petitioner is owed approximately $900,000 and acknowledges receiving $96,247 in revenue during the first two weeks of January while paying only $16,402 in expenses. *See* SMITH DECL. ¶ 8.

27. Unfortunately for the Alleged Debtor however, the "generally not paying standard" does not consider whether a debtor *can* pay its debts when due, but only whether the debtor is ***actually paying*** its debts when due. *See* COLLIER ON BANKRUPTCY ¶ 303.31 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014); *see also B.E. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Disc. Corp.)*, 701 F.2d 1071, 1076 (2d Cir. 1983) (noting Congressional compromise in which the phrase "is generally not paying" was substituted for "is generally unable to pay").

7

28. Courts in this Circuit have held that the "generally not paying" test calls for the consideration of four factors: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs." *See In re Paper I Partners, L.P.*, 283 B.R. 661, 677 (Bankr. S.D.N.Y. 2002); *In re Euro-American Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D. N. Y. 2007) (*citing In re Fischer,* 202 B.R. 341, 350 (E.D.N.Y.1996)); *In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81, 99 (Bankr. S.D.N.Y. 2020).

29. Thus, in determining whether the alleged debtor is generally not paying its debts as they become due, the Bankruptcy Court considers not only the number of creditors that are unpaid, but **the proportion of debt** that remains unpaid. *See e.g., In re All Media Properties* 5 B.R. 126, 143 (Bankr. S.D. Tex. 1980) (nonpayment of a single debt comprising 98% of the total debt meets the generally-not-paying standard); *In re B. D. Int'l Discount Corp.*, 15 B.R. 755, 763 (Bankr. S.D.N.Y. 1981) (same); *In re Concrete Pumping Serv., Inc.*, 943 F.2d 627 (6th Cir. 1991).

30. To be sure, "[t]here is substantial authority for the proposition that even though an alleged debtor may owe only one debt … an order for relief may be granted where such debt or debts are sufficiently substantial to establish the generality of the alleged debtor's default." *In re Fisher*, 202 B.R. 341, 350-51 (E.D.N.Y.1996); *In re Euro-American Lodging Corp.,* 357 B.R. at 713 ("the failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts."); *In re Century/ML Cable Venture,* 294 B.R. 9, 31 n. 37 (Bankr.S.D.N.Y.2003) ("The failure to pay a single debt can satisfy the requirement of generality where the debt is sufficiently substantial."); *Concrete Pumping,* 943 F.2d 627 (holding that a debtor in default of 100% of its obligations to one creditor is not paying its debts as they become due); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 521 (Bankr.W.D.Ark.1986) (holding that a debtor who paid less than 50% of his total debt is generally not paying his debts as they come due); *Matter*

8

*of International Teldata Corp.,* 12 B.R. 879 (Bankr. D. Nev. 1981) (debt that represents 90% of the debtor's total indebtedness constitutes failure to "generally" pay debts as they become due … even if the debtor is not in default to its other creditor); *In re Kreidler Import Corp.*, 4 B.R. 256 (Bankr. D.Md. 1980) (nonpayment of one debt constituting 97% of debtor's total 40 indebtedness held to constitute general nonpayment).

31. Here, unlike other businesses, other than very few trade creditors and payroll, Petitioner constitutes the Alleged Debtor's singular substantial recurring creditor. *See Reply to Objection to Motion for Appointment of Interim Chapter 7 Trustee* [Doc. No. 14], Ex. A (Income Statement) (indicating that the rent due to Petitioner constitutes over 65% of the Alleged Debtor's operating expenses).

32. Thus, Petitioner submits that if the Debtor is not paying Petitioner in the ordinary course, it is, by definition, "generally not paying its debts as they become due." *See Matter of Hill,* 5 B.R. 79, 82 (Bankr. D. Minn. 1980) (Debtor cannot choose to pay small, insignificant debts while failing to pay substantial judgments and be found to be generally paying its debts).

33. Even if the Court is reluctant to find that the Alleged Debtor was generally not paying its debts as they became due, the Court should enter an order for relief based on the special circumstances of this case of the Alleged Debtor's "fraud, artifice or scam."

    **C.**     **Special Circumstances Justify the Filing of the Involuntary Petition**

34. Under the "special circumstances doctrine" even a single creditor may establish a case for involuntary bankruptcy upon a showing of "special circumstances amounting to fraud, trick, artifice or scam." *In re 7H Land & Cattle Co.*, 6 B.R. 29 (Bankr. D. Nev. 1980); *In re Evans,* 1997 Bankr. LEXIS 1073, *15 (Bankr. E.D. Va. June 6, 1997); *In re Concrete Pumping Serv., Inc.,* 943 F.2d 627, 630 (6th Cir. 1991).

35. In *7H Land*, the bankruptcy court held that the petitioner (and sole creditor) proved that "special circumstances" warranted entry of an order for relief, when the alleged debtor used uncollectible deposits (funded by the petitioner) to pay other creditors. *See In re 7H Land & Cattle Co.*, 6 B.R. 29 (Bankr. D. Nev. 1980); *see also In re Moss,* 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000) (alleged fraudulent transfers to or for the benefit related entities and inability to identify the whereabouts of corporate assets constitute special circumstances justifying a single petitioning creditor).

36. Here too*,* Petitioner has shown special circumstances allow entry of an order for relief, as the testimony of Mr. Smith clearly articulates the Alleged Debtor's "scheme" to use its revenue to satisfy the obligations of related entities. *See In re Norriss Bros. Lumber Co.,* 133 B.R. 599, 608 (Bankr. N.D. Tex. 1991) (purported fraudulent conveyances and preferential transfers constituted special circumstances); *In re H.I.J.R. Properties Denver,* 115 B.R. 275, 278 (Bankr. D. Colo. 1990) (possible recovery of preferential transfer under 11 U.S.C. § 547 justified single creditor involuntary petition); *In re B.D. Int'l Discount Corp.,* 13 B.R. 635, 638 (finding special circumstances when financial manipulations required appointment of trustee).

## II.  NO CAUSE EXISTS WARRANTING DISMISSAL UNDER SECTION 707(a) OF THE BANKRUPTCY CODE

37. The plain language of section 303 of the Bankruptcy Code does not explicitly require that an involuntary petition be filed in good faith*. In re Vincent J. Fasano Inc.*, 55 B.R. 409, 418 (Bankr. N.D. N.Y. 1985).

38. Nevertheless, courts in this District have held that an involuntary chapter 7 case may be dismissed for "cause" under Bankruptcy Code section 707(a) when filed in bad faith. *See In re Murray*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018).

39. However, a presumption of good faith rests upon the petitioning creditor and the burden of proving bad faith rests with the debtor. *See In re Bayshore Wire Products Corp.*, 209 F.3d 100, 105 (2d Cir. 2000); *In re Fox Island Square Partnership*, 106 B.R. 962, 967 (Bankr. N.D.Ill. 1989). The standard of proof is not a light one, as courts have required "nearly unconscionable behavior before finding bad faith." *See United States Fidelity & Guaranty Co. v. DJF Realty & Suppliers, Inc.*, 58 B.R. 1008, 1011 (N.D.N.Y. 1986) (Court relied on cases requiring either "wicked indifferen[ce]" to the truth of allegations or proof that the petition was filed "groundlessly, with intent to harass, vexatiously or oppressively") (citing *In re Trans High Corp.,* 3 B.R. 1, 4 (Bankr. S.D.N.Y. 1980) and *In re Howard, Neilsen & Rush, Inc.,* 2 B.R. 451 (Bankr. N.D. Tenn. 1979)).

40. Here, the Alleged Debtor tries to argue that cause exists to dismiss the petition pursuant to section 707(a) of the Bankruptcy Code because this proceeding constitutes an improper or duplicative use of the bankruptcy system. *See* Dismissal Mot. ¶¶ 12-13.

41. However, even the court in *In re Murry* held that, "the existence of a two-party dispute **does not**, by itself, **warrant dismissal of a case** where there are other legitimate bankruptcy objectives to achieve, it is [merely] a factor … considered…" *In re Murray*, 543 B.R. 484, 493 (Bankr. S.D.N.Y. 2016) (emphasis added).

42. The Alleged Debtor also acknowledges that there were at least two other creditors as of the Petition Date, not including "accrued labor, tax and benefit payments for the union employees who work at the Garage." *See* Smith Decl. ¶ 7.

43. In any event, as several courts have noted, the filing of an involuntary petition by a single creditor is not only clearly authorized by the Bankruptcy Code, but consistent with its promise to provide an "equal distribution of the debtor's property among each class of

20-12976-jlg    Doc 19    Filed 02/09/21    Entered 02/09/21 00:49:29    Main Document
                                    Pg 12 of 15

creditors without preferential treatment." *In re Caucus Distributors, Inc.*, 106 B.R. 890, 928 (Bankr. E.D. Va. 1989) (citing involuntary petitions under the new Bankruptcy Code, 97 Banking L.J. 292); *In re Leslie Fay Companies, Inc.,* 168 B.R. 294, 303 (Bankr. S.D.N.Y. 1994) (protection of creditors is an inherent part of the bankruptcy process); *see also In re Byrd*, 357 F.3d 433, 436 (4th Cir. 2004) (Bankruptcy Code permits a single creditor to commence an involuntary case against a debtor); *In re Norris*, 183 B.R. 437, 460 (Bankr. W.D. La. 1995); *B.D. Int'l Discount Corporation*, 13 B.R. 639-40 (holding that case was ripe for appointment of a trustee and deserved bankruptcy administration even if there was only one creditor). *See generally* David A. Skeel, Jr., DEBT'S DOMINION: A HISTORY OF BANKRUPTCY LAW IN AMERICA at 3 (2001) ("The distinctive features of U.S. bankruptcy law [which] date back to the final decades of the nineteenth century … assured that creditors would have access to, and share equally in, the assets of an insolvent debtor....").

44.    In *In re Hrobuchack*, No. 14-02098 (JJT), 2015 WL 1651074, at *2 (Bankr. M.D. Pa. Apr. 8, 2015), the court, in denying a motion for reconsideration by a debtor seeking to dismiss an involuntary petition, held that the petitioners did not act in bad faith simply by invoking the court's jurisdiction because they wanted to be paid the money owed to them:

> It is true that the petitioning creditors were owed money and, in all certainty, want to have their claim paid to the fullest extent provided by the Bankruptcy Code. The petitioning creditors believed that a fraudulent dissipation of Debtor's assets was imminent and were attempting to forestall any dissipation of assets from the reach of bona fide creditors.

*Hrobuchack*, 2015 WL 1651074, at *2.

45.    Here, the Involuntary Petition was not filed to collect a debt, but rather to install an independent fiduciary to secure the Alleged Debtor's books and records, and investigate and pursue avoidable and fraudulent transfers and breach of fiduciary duty claims, most of which

are only available to a trustee, for the benefit of all creditors and parties-in-interest to the estate. *See In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015) (the dissipation of the alleged debtor's assets is a proper basis for filing an involuntary bankruptcy petition).

46. The Alleged Debtor's arguments to the contrary cannot be justified on any principled legal basis.

### III. THE COURT SHOULD NOT DISMISS OR ABSTAIN UNDER SECTION 305(a) OF THE BANKRUPTCY CODE OR 28 U.S.C. § 1334

#### A. Abstention is an Extraordinary Remedy

47. In the Dismissal Motion, the Alleged Debtor seemingly acknowledges its burden of proof under 11 U.S.C. § 305 (*see* DISMISSAL MOT. ¶¶ 20-34) but fails to recognize the extent of its burden to support the extraordinary remedy requested. "The case law concerning suspension of a bankruptcy case pursuant to § 305(a)(1) is sparse, but there is no dispute that suspension is 'an extraordinary remedy that should be used sparingly and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code.'" *In re Schur Mgmt. Co., Ltd.,* 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005) (*citing* COLLIER ON BANKRUPTCY at ¶ 305.02 at 305-5); *see also In re Corino*, 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995); *In re Luftek, Inc.,* 6 B.R. 539, 548 (Bankr. E.D.N.Y. 1980).

48. Under section 305(a) of the Bankruptcy Code, "abstention is appropriate only if it will not impair the interests of any of the parties involved." *Farmer v. First Va. Bank*, 22 B.R. 488, 491 (E.D. Va. 1982).

49. In the case at hand, the Alleged Debtor did not even try to demonstrate that abstention would better serve the interests of creditors, and the record is abundantly clear that it would not. The purpose of the bankruptcy law includes more than debtor protections, but also,

13

"marshalling and fair distribution of the debtor's assets." *In re Ethanol Pacific, Inc.,* 166 B.R. 928, 931 (Bankr. D. Idaho 1994).

50. Here, Petitioner respectfully submits that this Court is the most appropriate forum to resolve alleged fraudulent transfer claims and the winding down of the Alleged Debtor's affairs, and that the creditor body is entitled to this Court's jurisdiction in order to protect their interests.

51. Accordingly, because the interests of creditors would be better served in this Court, abstention is unwarranted under either Bankruptcy Code section 305(a) or 28 U.S.C. § 1334.

### IV. THE ALLEGED DEBTOR IS NOT ENTITLED TO COSTS OR ATTORNEYS FEES UNDER SECTION 303(i) OF THE BANKRUPTCY CODE

52. In a desperate attempt to bolster its argument for dismissal, the Alleged Debtor prematurely requests for fees and costs under section 303(i) of the Bankruptcy Code. *See* DISMISSAL MOT. ¶¶ 38-41.

53. Under a plain reading of the law, an alleged debtor may be entitled to costs and fees, ***only if*** the court dismisses the involuntary petition other than on consent. *See generally* 11 U.S.C. § 303(i)(1)(A) & (B); *In re Reid,* 854 F.2d 156, 161 (7th Cir. 1988) (recovery under section 303(i) depends on the dismissal of an involuntary petition); *Higgins v. Vortex Fishing Systems, Inc.* 379 F3d 701, 706 (9th Cir. 2004) (use of "may" contemplates that fees and costs will not be awarded in all cases).

54. However, as discussed above, the Alleged Debtor has failed to set forth a basis for dismissal and thus, it is not entitled to costs and fees under section 303(i) of the Bankruptcy Code.

## **CONCLUSION**

55.      In light of the foregoing, Petitioner respectfully requests that the Court deny the Dismissal Motion in its entirety and enter an order for relief pursuant to section 303(h) of the Bankruptcy Code.

Dated: New York, New York
       February 8, 2021

**ROSEN & ASSOCIATES, P.C.**
*Counsel to 250 E. 87 Owners Corp.*

By:  /s/  *Sanford P. Rosen*
       Sanford P. Rosen
       Paris Gyparakis

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100