NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                                    :

In re:                                               :        Chapter 7

       NEWBURY OPERATING LLC,             :

                                                :

                         Alleged Debtor.       :        Case No. 20-12976-JLG

------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART NEWBURY OPERATING LLC'S <u>MOTION TO DISMISS INVOLUNTARY PETITION.</u>

<u>A P P E A R A N C E S</u> :

CULLEN AND DYKMAN LLP
*Counsel for Newbury Operating LLC*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
<u>By</u>:    C. Nathan Dee, Esq.
        Elizabeth M. Aboulafia, Eq.

ROSEN & ASSOCIATES, P.C.
*Counsel for 250 E. 87 Owners Corp.*
747 Third Avenue
New York, New York 10017
<u>By</u>:    Sanford P. Rosen, Esq.
        Paris Gyparakis, Esq.

**JAMES L. GARRITY, JR.**
**United States Bankruptcy Judge:**

## Introduction

As of December 28, 2020 (the "Petition Date"), Newbury Operating LLC ("Newbury" or the "Alleged Debtor") was operating an "Icon Parking" branded parking garage (the "Garage") in a building located at 250 E. 87th Street, New York, New York.  It had not paid rent to its landlord, 250 E. 87 Owners Corp. (the "Landlord"), since April 2020 and the Landlord was seeking the appointment of a Receiver in the State Court Action (defined below) that the Landlord had commenced against Newbury in October 2020. That day, the Landlord, as the sole petitioning creditor, commenced this case by filing an involuntary petition under chapter 7 of the Bankruptcy Code (the "Involuntary Petition") against Newbury in this Court.  In this motion (the "Motion"),[1] Newbury asks the Court (i) to dismiss the Involuntary Petition, with prejudice, pursuant to sections 303(h), 305(a) and 707 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq, as amended (the "Bankruptcy Code"), or, alternatively, (ii) to abstain from consideration of the Involuntary Petition pursuant to section 305(a) of the Bankruptcy Code and/or exercise its discretion to permissively abstain from hearing the involuntary case pursuant to Judiciary Code section 1334(c). Newbury also asks the Court to award it the attorneys' fees and related costs that it has incurred in this case. The Landlord opposes the Motion (the "Opposition").[2]

---

[1]    *See* Newbury Operating LLC's Motion to Dismiss Involuntary Bankruptcy Petition Or, Alternatively, For Abstention [ECF No. 17]; Supplemental Declaration of John D. Smith In Support of Newbury Operating LLC's Motion to Dismiss Involuntary Petition Or, Alternatively, For Abstention ("Smith Decl. II"); Declaration Of John D. Smith In Support Of Newbury Operating LLC's Objection To The Motion For Appointment Of Interim Chapter 7 Trustee and Motion to Dismiss or For Abstention (the "Smith Decl. I") [ECF No. 13]; and Newbury Operating LLC's Reply To Petitioner's Response In Opposition to the Alleged Debtor's Motion To Dismiss Involuntary Bankruptcy Petition Or, Alternatively, For Abstention [ECF No. 21].

[2]    *See* Response In Opposition To Motion To Dismiss Involuntary Bankruptcy Petition Or, Alternatively, For Abstention [ECF No. 19].

This is essentially a two-party case as the Landlord holds over 98% of the debt in the case, and the Alleged Debtor's two ordinary course creditors have taken no action in the case. For the reasons set forth below, the Court grants the Motion and dismisses the case pursuant to sections 707 and 305(a) of the Bankruptcy Code. The Court denies the Alleged Debtor's request for relief under 28 U.S.C. § 1334(c) and its request for an award of its attorneys' fees and costs incurred herein.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Facts

In 2013, Newbury took possession of the Garage pursuant to a twelve-year lease agreement with the Landlord dated December 31, 2012 (the "Lease"). Newbury is an affiliate of Icon Parking. As of the Petition Date, it was operating the Garage as an "Icon Parking" branded parking garage. Smith Decl. I ¶ 2. Icon Parking operates parking garages throughout New York City. In the ordinary course of business, it manages and provides administrative services to its affiliates, including Newbury. In operating its business, Icon Parking utilizes a centralized and integrated cash management system which provides established mechanisms for the collection, management, and disbursement of funds used in the operation of the parking garage entities. Smith Decl. II ¶ 4. Under that system, Newbury reflects the collection and disbursement of funds that it generates in the operation of the Garage in its books and records and maintains a bank

account into which it deposits parking fees. *Id.* ¶ 5. Each day, Icon Parking sweeps the funds

deposited into that account (and the accounts of all of its affiliates) into an Icon Parking-

managed account (the "Paymaster Account") out of which it pays the following categories of

costs on behalf of Newbury and all affiliated Icon Parking garage entities: (i) employee payrolls,

(ii) general and administrative expenses, (iii) rent, and (iv) all other operating costs associated

with the operation of the parking garages. *Id.* ¶¶ 5-6. Among the management and

administrative services that Icon Parking provides to Newbury and affiliates, is that Icon Parking

obtains letters of credit for the benefit of the garage operators and provides insurance coverage to

their subsidiaries and their employees. *Id.* ¶ 6. The six employees who worked for Newbury at

the Garage are members of the Garage Employees Union Local No. 272. Icon Parking is

responsible for paying their union benefits and dues on Newbury's behalf. Smith Decl. I ¶ 2.

The Lease calls for Newbury to pay the Landlord base rent in the amount of $73,958.33 per

month, as well as additional rent, defined as, "all sums other than base rent, including late charges,

tax escalation, service charges, interest, [and] any other costs." Pretsfelder Aff., Ex. 1.[3] Prior to the

onset of the COVID-19 pandemic in March 2020, Newbury made its monthly Lease payments

without exception. However, Newbury ceased paying its rent in April 2020, notwithstanding that it

continued to operate the Garage and collect the associated revenue, including parking fees from

its 220 monthly customers. *Id.* ¶ 11. All attempts by the Landlord to collect the outstanding debt

against Newbury proved to be futile, and on October 14, 2020, the Landlord commenced a civil

action against Newbury (the "State Court Action") in the New York County Supreme Court (the

"State Court"). *Id.* ¶ 5. On October 21, 2020, the Landlord drew down on a letter of credit in the

amount of $196,875.00, that it was holding as security under the Lease, thus reducing the arrearages

---

[3]    *See* Affidavit of Peter Pretsfelder In Support Of Motion For Appointment of Interim Chapter 7 Trustee (the "Pretsfelder Aff.") [ECF No. 7-2]

due to it under the Lease. Thereafter, the letter of credit issuing bank demanded and obtained

reimbursement from Icon Parking for such sums. Smith Decl. I ¶ 8. The Landlord subsequently

served Newbury with a *Notice of Default* under the Lease dated October 22, 2020 (the "Default

Notice").  Among other things, the notice provided until November 6, 2020, for Newbury to cure

the default by tendering the then outstanding rent in the amount of $591,369.77.  Pretsfelder Aff.

¶ 6, Ex. 3. Newbury failed to cure the default and, on or about November 9, 2020, the Landlord

served it with a *Notice of Termination* (the "Termination Notice").  That notice advised Newbury

that the Lease would be terminated effective November 16, 2020. *Id.* ¶ 7, Ex. 4.

Newbury took no action in response to the Default and Termination Notices, and on

November 30, 2020, the Landlord moved by order to show cause in the State Court Action for

the appointment of a Receiver with the authority to retain a parking garage operator to operate

the Garage and collect the fees generated therefrom. Pretsfelder Aff. ¶ 8, Ex. 5. On December 11,

2020, Newbury filed an answer to the initial complaint in the State Court Action denying all

substantive allegations.  The Landlord rejected the answer as untimely. *Id.* ¶ 9. On December 22,

2020, Newbury opposed the motion for the appointment of a Receiver. The State Court

scheduled a hearing on the motion for January 12, 2021. The commencement of this involuntary

case on December 28, 2020 automatically stayed the Landlord's prosecution of the State Court

Action. By letter dated January 4, 2021, counsel for the Landlord in the State Court Action

informed the state court of the bankruptcy case and requested all aspects of the litigation be

stayed pending the resolution of the bankruptcy. Motion, Ex. 3. *See also* Smith Decl. I ¶ 12.

On January 8, 2021, the Landlord filed a motion herein (the "Trustee Motion"), on an

emergency basis, seeking the appointment of an interim chapter 7 trustee in the case pursuant to

section 303(g) of the Bankruptcy Code and Rule 2001 of the Federal Rules of Bankruptcy

4

Procedure.[4]  In support of the motion, the Landlord asserted that Newbury had operated the

Garage since April 2020, without tendering the rent due and owing under the terms of the Lease,

but, nonetheless, through the cash sweeps, had systematically disbursed its operating income to

related entities for no consideration. Pretsfelder Aff. ¶¶ 3-4.  The Landlord argued that the Court

should appoint a chapter 7 trustee to secure Newbury's books and records and investigate and

pursue avoidable and fraudulent transfers and breach of fiduciary duty claims against Newbury,

Icon Parking and its affiliates, for the benefit of all parties in interest.  On February 9, 2021, the

parties submitted a stipulation resolving the Trustee Motion (the "Trustee Stipulation").[5]  In

substance, pursuant to that stipulation, the parties agreed that pending resolution of the Motion,

Icon Parking would not sweep cash from Newbury's operating account to the Paymaster

Account, Newbury would pay ordinary course operating expenses incurred in operating the

Garage (other than the rent), and Icon Parking would return to Newbury's account any funds that

it swept from that account to the Paymaster Account after December 29, 2020. Trustee

Stipulation ¶¶ 1-2. The parties also agreed that to the extent the Court enters an order for relief

herein, all funds then on deposit in Newbury's bank account shall constitute property of its

bankruptcy estate. *Id.* ¶ 3.

Effective February 28, 2021, Newbury ceased operating, surrendered the Lease to the

Landlord, and vacated the Garage.

---

[4]    *See* Motion For Appointment Of Interim Chapter 7 Trustee [ECF No. 7].

[5]    *See* Stipulated and Agreed Order Resolving the Motion for Appointment of Interim Chapter 7 Trustee [ECF No. 20].

## The Motion

Newbury asserts that in the wake of the onset of the pandemic it experienced a precipitous decline in its revenue that impaired its ability to pay its operating expenses, including rent under the Lease. Smith Decl. I ¶¶ 3-5. In the nine months preceding the Petition Date, Newbury remained current on all its obligations in operating the Garage, save for the payment of rent. As of the Petition Date, Newbury owed the Landlord approximately $655,884 on account of its obligations under the Lease. *See* Official Form 205, Part 3 [ECF No. 1]. On that day, it also owed two trade creditors approximately $8,000 in the aggregate. Smith Decl. II ¶ 7. There is no dispute that Newbury was otherwise current with its trade creditors and would have paid them, in full, in the ordinary course, but for the filing of the Involuntary Petition. Smith Decl. I ¶ 9. Newbury concedes that it has not paid rent since March 2020, and that the Landlord holds a general unsecured claim of at least $16,750 that is not contingent as to liability or the subject of a *bona fide* dispute. Nonetheless, Newbury contends that the Landlord is not entitled to relief under section 303 of the Bankruptcy Code because the Landlord has not demonstrated that it is "generally not paying its debts as they come due."  Newbury says that is so, because this case amounts to a two-party dispute and the Landlord has not demonstrated "special circumstances" warranting the entry of an order for relief under section 303(h) in this involuntary case. Motion ¶ 10. In support of the Motion, Newbury also contends that the Court should dismiss the Involuntary Petition pursuant to section 707(a) of the Bankruptcy Code, or alternatively abstain under section 305(a) of the Bankruptcy Code from considering the Involuntary Petition and dismiss this case, and/or exercise its discretion to permissively abstain from hearing the case pursuant to 28 U.S.C. § 1334(c)(1). *Id.*

6

In contesting the Motion, the Landlord contends that it has stated grounds for relief under section 303 of the Bankruptcy Code and that it has not demonstrated that there is cause under sections 707 or 305(a) of the Bankruptcy Code or Judiciary Code section 1334(c) to dismiss or abstain from hearing the Involuntary Petition. Opposition ¶¶ 23-24, 31-36, 40-46, 49-51. The Landlord focuses on the alleged bad acts of Newbury and Icon Parking in sweeping Newbury's daily receipts and operating revenue into the Paymaster Account, at Newbury's expense and for the benefit of Icon Parking and its affiliates, even as Newbury failed to pay rent to the Landlord. *Id.* ¶¶ 16-20. Repeating the arguments that it made in support of the Trustee Motion, the Landlord asserts that Newbury's and Icon Parking's centralized cash management system is little more than a mechanism for effectuating fraudulent conveyances and that this Court should enter an order for relief so that a chapter 7 trustee can take possession and control of Newbury's books and records and pursue estate claims against Icon Parking, the Alleged Debtor's affiliates and its officers and directors for the benefit of Newbury's creditors. *Id.* ¶ 21. It contends that in these circumstances, dismissal of the case for would be at odds with established case law and "an affront to this Court's purpose as a court of equity." *Id.* ¶ 2.

The Court considers those matters below.

## Discussion

Section 303 of the Bankruptcy Code governs involuntary bankruptcy petitions. Section 303(b) fixes the numerosity and debt thresholds for petitioning creditors eligible to commence and involuntary case.[6] It is a " 'gating' provision, intended to place limitations on the

---

[6]    Section 303(b) states, as follows:

   (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

commencement of involuntary cases." *In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 594 (Bankr. S.D.N.Y. 2018). In turn, section 303(h) governs the determination whether a creditor who has filed an involuntary bankruptcy petition may obtain an order for relief.  As relevant, section 303(h)(1) states that where the petition has been timely controverted, the court shall order relief if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). Together, these provisions establish a four-part test for a contested involuntary petition commenced by a sole petitioning claimholder:

> (i) the petitioning claimholder's claim is not contingent as to liability or subject to a *bona fide* dispute as to liability or amount,
>
> (ii) the petitioning claimholder is under secured by at least $16,750,
>
> (iii) there are fewer than twelve claimholders (not counting insiders, employees, transferees of voidable transfers, and holders of contingent or disputed claims), and
>
> (iv) the alleged debtor is generally not paying its debts as they come due.

*See In re Euro American Lodging Corp.*, 357 B.R. 700, 711-12 (Bankr. S.D.N.Y. 2007) (citing *In re Amanat*, 321 B.R. 30, 35 (Bankr. S.D.N.Y. 2005)).

---

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $16,750 of such claims.

11 U.S.C. § 303(b).

There is no dispute that the Landlord satisfied the standards under section 303(b)(2) and is eligible to commence this case against Newbury. However, Newbury contends that the Landlord, as the single petitioning creditor, has not satisfied section 303(h) because it has not demonstrated "special circumstances" in support of the petition.  Motion ¶¶ 36-37.  Newbury labels its dispute with the Landlord as an ordinary commercial rent dispute and asserts that the filing of the Involuntary Petition against it is simply the continuation of a two-party dispute for non-payment of rent which began in the State Court – the Landlord's forum of choice in which to pursue its rights and remedies against Newbury including, but not limited to, seeking the appointment of a Receiver.  *Id.* at 3.  As of the Petition Date, there was a statewide moratorium on evictions in effect in response to the ongoing pandemic.[7]  The Alleged Debtor asserts that the Landlord filed the case as part of its litigation strategy in the two-party dispute, and that its actions were calculated to avoid the impact of the moratorium, by providing it with an eviction mechanism that was then unavailable in the pending State Court Action.  *Id.* ¶ 36.  It argues that allowing this action to proceed will not provide a collective remedy for a number of creditors consistent with the purpose of the bankruptcy process, but rather will open the floodgates for the use of the bankruptcy courts as a forum for two-party disputes brought by aggrieved landlords seeking to dispossess their tenants and collect past due rent.  *Id.* ¶ 37.

The so-called "special circumstances" exception to section 303 of the Bankruptcy Code (also known as the "almost *per se* rule") is a judge-made doctrine that originated in single creditor cases where the courts were analyzing whether the failure to pay a single creditor could

---

[7]    New York Governor Andrew Cuomo's Executive Order 202.92, which continued through February 26, 2021 all directives made by Executive Order 202, extended the moratorium on initiating a proceeding or enforcement of an eviction of any commercial tenant for nonpayment of rent. *See* New York State Exec. Order No. 202.92 (January 27, 2021), https://www.governor.ny.gov/news/no-20292-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

constitute a failure to pay debts generally.  Courts that recognize that doctrine hold that the

creditor in what is essentially a two-party dispute is not entitled to relief unless it can

demonstrate either that it will otherwise be without a remedy under non-bankruptcy law if denied

such relief; or that there are "special circumstances" amounting to "fraud, trick, artifice or scam"

on the part of the alleged debtor that are best addressed through the bankruptcy case. The genesis

of the doctrine is in *7H Land & Cattle Co.*, 6 B.R. 29 (Bankr. D. Nev. 1980).  In that case, the

alleged debtors sought to dismiss three involuntary petitions filed against them by their bank.

They contended that the petitions failed to state claims for relief against them under section 303

because an allegation that a debtor "is generally not paying such debtor's debts as such debts

become due" does not constitute grounds for an order for relief where there is only one creditor.

*Id*. at 30.  In reviewing that matter, the court started from the proposition that "[i]t may be

assumed that in the ordinary case there can be no order for relief with no more proof than mere

failure to meet liability to a single creditor."  *Id.* at 31.  That court considered whether "the

allegation that the alleged debtors have failed to pay one creditor constitute 'generally not paying

such debtor's debts'?  Or stated another way, under what circumstances may a single creditor

establish a case for involuntary bankruptcy with only proof of a default in respect to the debt or

debts owing to him?"  *Id*.  In answering that question, the court found that "[i]t may be assumed

that in the ordinary case there can be no order for relief with no more proof than mere failure to

meet liability to a single creditor." *Id.*  From there, the court found that

> In view of [the language in section 303(b)] in the plural as to creditors, combined
> with the plural of "debts" and the use of the word "generally" [in section 303(h)]
> it must be either (1) an exceptional case of a debtor with a sole creditor who
> would otherwise be without an adequate remedy under State or Federal law (other
> than bankruptcy law) if denied an order for relief or (2) a showing of special
> circumstances amounting to fraud, trick, artifice or scam.

*Id.* at 34.  *See also Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer),* 202

B.R. 341, 346 (E.D.N.Y.1996) ("Under the Almost *Per Se* Rule, courts are disinclined to grant

an order for relief upon an involuntary petition for bankruptcy where there is only a single

creditor. The courts that have adopted this rule have implied that a 'single creditor proceeding' is

incapable of meeting the requirement of 'generality' set forth in 11 U.S.C. § 303(h)(1), thereby

precluding an order for relief.  In addition, as a policy matter, these courts have expressed their

opposition to a single creditor's use of a bankruptcy court as a debt-collection technique.")

(citations omitted).  Courts in this circuit have applied the doctrine in denying a single petitioning

creditor eligibility to obtain relief under section 303 of the Bankruptcy Code.  *See, e.g., In re*

*Westerleigh Dev. Corp.,* 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992) (dismissing involuntary

petition and finding that "[t]he key point is that a bankruptcy court should entertain a two-party

dispute unless special circumstances exist, such as fraud, artifice or scam."); *In re Alumsa Dev.*

*Corp.*, 33 B.R. 981, 982-83 (Bankr. S.D.N.Y. 1983) ("[A]n alleged debtor's failure to satisfy the

liability of a single creditor 'does not warrant the granting of an order for relief pursuant to Code

section 303(h)(1)' " unless one of two exceptions to the "single creditor-sole liability rule

denying the involuntary petition" applies, namely: "(1) an exceptional case of a debtor with a

sole creditor who would otherwise be without an adequate remedy under non-bankruptcy law if

denied an order for relief; or (2) the showing of special circumstances amounting to fraud,

artifice or scam." (internal citations omitted)); *Matter of LeSher Int'l, Ltd.*, 32 B.R. 1, 2 (Bankr.

S.D.N.Y. 1982) (applying rationale of *7H Land & Cattle Co* and dismissing single creditor

involuntary petition where petitioning creditor failed to demonstrate that either exception

applied); *Matter of Goldsmith,* 30 B.R. 956, 963 (Bankr. E.D.N.Y. 1983) ("I support the

hesitancy of courts to find that an alleged debtor is 'generally not paying its debts' . . . when there is only one debt, even if it is a large one.").

The Court finds that the "almost *per se* rule" and the "special circumstances" exception are inapplicable in assessing whether the Landlord has stated a claim for relief under section 303 because they run afoul of and are inconsistent with the numerosity requirements as reflected in the plain language of sections 303(b) of the Bankruptcy Code. In *In re Fischer,* 202 B.R. 341, the district court rejected application of the "almost *per se* rule." In doing so, that court found that the rule was not rooted in the plain language of the statute. Applying the settled rule of statutory construction, which "requires the courts to follow the plain language of the statute, unless following such language would produce a result that is clearly at odds with Congress's intent," the district court rejected the "almost *per se* rule" as inconsistent with the plain language of sections 303(b) and 303(h)(1). *Id.* at 348 (citing *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)). The court reasoned that "a reading of 11 U.S.C. § 303(h)(1) that bars a single creditor from obtaining an order for relief on an involuntary petition without demonstrating 'special circumstances' cannot be reconciled with 11 U.S.C. § 303(b)(2), which allows a single creditor to initiate an involuntary bankruptcy proceeding provided that there are fewer than twelve creditors." *Id.* at 347-48. It found that "[i]f Congress had intended that a single creditor not be entitled to relief, this result easily could have been written into the statute." *Id.* at 348. In *In re Euro-American Lodging Corp.*, 357 B.R. 700, the court (Bernstein, J.) echoed the holding of the *Fischer* court and rejected application of the "almost *per se* rule" to bar a single petitioning creditor from obtaining relief under section 303 as inconsistent with the plain meaning of section 303(h)(1). In doing so, the court found that the "number of creditors is simply one of the factors that must be considered in determining whether the debtor is generally

12

not paying its undisputed, non-contingent debts." *Id*. at 728. *Accord Federal Fin. Corp. v. DeKaron Corp*., 261 B.R. 61, 64 (S.D. Fla. 2001) ("Had Congress wanted to provide that the 'generally not paying' standard could not be met in single/sole creditor cases, it could have (and would have) said so expressly. I therefore reject the 'almost *per se* rule' articulated in the cases cited by the bankruptcy court.").

The Court will not apply the "special circumstances" exception herein. Instead, the Court will consider the following non-exclusive factors in assessing whether the Landlord has demonstrated that Newbury is not paying its debts as they become due: (i) the number of claims that the debtor has not paid; (ii) the amounts of these unpaid claims; (iii) the materiality of the non-payments; and (iv) the debtor's overall financial condition and affairs. *In re Paper I Partners, L.P*., 283 B.R. 661, 677 (Bankr. S.D.N.Y. 2002). *See also In re Acis Capital Management, L.P*., 584 B.R. 115, 143 (Bankr. N.D. Tex. 2018) ("In determining whether an alleged debtor is generally paying its debts as they come due, courts typically look to four factors: (i) the number of unpaid claims; (ii) the amount of such claims; (iii) the materiality of the non-payments; and (iv) the nature of the debtor's overall conduct in its financial affairs.") (citations omitted). "No one factor is more meritorious than another; what is most relevant depends on the facts of each case." *Id*. (citation omitted).

It is settled that the failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts. *See In re Fisher*, 202 B.R. at 350–51 ("There is substantial authority for the proposition that even though an alleged debtor may owe only one debt, or very few debts, an order for relief may be granted where such debt or debts are sufficiently substantial to establish the generality of the alleged debtor's default."); *In re Amanat*, 321 B.R. at 39–40 ("Where a debtor fails to pay even one debt that makes up a substantial

portion of its overall liability, a court may find that he is generally not paying his debts."); *In re Century/ML Cable Venture*, 294 B.R. 9, 31 n.37 (Bankr. S.D.N.Y. 2003) ("The failure to pay a single debt can satisfy the requirement of generality where the debt is sufficiently substantial."). Newbury stopped paying the Landlord in April 2020, but essentially remained current on other recurring debt that it incurred in operating the Garage. Newbury has three creditors and the Landlord is, by far, its largest creditor. It is also its most significant creditor as Newbury operated its business in the Landlord's Garage and the rental charges constitute more than 65% of the Alleged Debtor's monthly operating expenses. *See* Reply to Objection to Motion for Appointment of Interim Chapter 7 Trustee, Ex. A. [ECF No. 14]. An alleged debtor may not be "generally" paying his debts as they come due when it is not paying one hundred percent of its debts to only one significant creditor, or paying most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts. That is the situation here. Under these circumstances, the Landlord has met its burden in demonstrating that Newbury is generally not paying its debts as they come due. *See, e.g., In re Fischer*, 202 B.R. at 350–51 (even though the debtor only had two outstanding debts, the total dollar amount failed to establish that, in terms of dollar amounts, the debtor was paying anywhere close to 50% of his liabilities, so he was not generally paying his debts as they became due); *In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009) (while the debtor was paying small recurring debts, he was not paying 99 percent of his debts in the aggregate amount and thus was not generally paying his debts as they became due); *In re Garland Coal & Mining Co.*, 67 B.R. 514, 522 (Bankr. W.D. Ark. 1986) (a debtor was generally not paying its debts as they became due where, although the debtor was paying most of its creditors in number, the total debt which it was not paying exceeded 50% of its outstanding liabilities).

The Landlord has demonstrated that it holds an unsecured claim against the Alleged

Debtor in excess of $16,750 that is not contingent as to liability or subject to a *bona fide* dispute

as to liability or amount, that the Alleged Debtor has fewer than twelve eligible claimholders and

that the Alleged Debtor is generally not paying its debts as they come due.  It has satisfied the

four-part test for a contested involuntary petition commenced by a sole petitioning claimholder

enunciated in *Euro-American Lodging*.  As such, it has demonstrated grounds for the entry of an

order for relief against Newbury under section 303 of the Bankruptcy Code.  The Court therefore

denies the Alleged Debtor's request that it dismiss the Involuntary Petition pursuant to section

303.

Below, the Court considers whether it should dismiss the Involuntary Petition or suspend

all proceedings herein pursuant to sections 707 and 305(a) of the Bankruptcy Code, or Judiciary

Code section 1334(c).

Dismissal for Cause Under 11 U.S.C. § 707(a)

Under section 707(a) of the Bankruptcy Code, a court may dismiss a case under chapter 7

of the Bankruptcy Code "after notice and a hearing," and "only for cause[.]" 11 U.S.C. § 707(a).

This provision applies equally to involuntary and voluntary chapter 7 cases.  Thus, where, as

here, the Landlord has stated grounds for relief under section 303, the Court may nonetheless

dismiss the case under section 707 for "cause" shown. *See Wilk Auslander LLP v. Murray (In re*

*Murray)*, 900 F.3d 53, 60 (2d Cir. 2018) ("Even if a petition meets the statutory requirements of

Section 303, however, a bankruptcy court may dismiss it for cause under Section 707(a) after

notice and a hearing.") (citing *In re MacFarlane Webster Assocs*., 121 B.R. 694, 696, 700

(Bankr. S.D.N.Y. 1990)). The statute does not define "cause," but includes three non-exclusive

grounds sufficient to warrant dismissal of a chapter 7 case.[8]  Those grounds "are illustrative, not

exclusive."  *Smith v. Geltzer (In re Smith),* 507 F.3d 64, 72 (2d Cir. 2007) (citations omitted).

*See also Dinova v. Harris (In re Dinova),* 212 B.R. 437, 442 (2d Cir. BAP 1997) ("Dismissal for

cause under section 707(a) is not limited to the three examples enumerated within the section.")

(citations omitted).  Accordingly, in resolving motions to dismiss under section 707(a), the Court

"has discretion to determine what additional circumstances, not enumerated in the statute, may

constitute cause." *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC,* 476 B.R. 60, 67

(E.D.N.Y.2012) (interpreting section 1112(b) and affirming dismissal of chapter 11 case). In

resolving motions to dismiss chapter 7 cases under section 707(a), courts must "'engage in case-

by-case analysis in order to determine what constitutes 'cause' sufficient to warrant dismissal.' "

*In re Murray*, 900 F.3d at 58 (quoting *In re Dinova*, 212 B.R. 437, 442 (2d Cir. BAP 1997)). In

each case, a court must "determine[ ] whether cause exists by looking at whether dismissal

would be in the best interest of all parties." *In re Smith*, 507 F.3d at 72 (internal quotation marks

omitted).

Newbury contends that there is "cause" under section 707(a) to dismiss the Involuntary

Petition because this is a two-party case that the Landlord commenced solely as a litigation tactic

---

[8]    Section 707(a) states that

   The court may dismiss a case under this chapter only after notice and a hearing and only for cause,
   including—

       (1) unreasonable delay by the debtor that is prejudicial to creditors;

       (2) nonpayment of any fees and charges required under chapter 123 of title 28; and

       (3) failure of the debtor in a voluntary case to file, within fifteen days ... the information
       required by paragraph (1) of section 521, but only on a motion by the United States
       trustee.

11 U.S.C. § 707(a).

in its quest to collect unpaid rent. It says that the Court should dismiss this case because the

Bankruptcy Court is not a "collection agency" and, in any event, because this proceeding

constitutes an improper or duplicative use of the bankruptcy system which this Court should not

countenance.  Motion ¶¶ 12-13. As support for the Motion, Newbury principally relies on *In re

Murray,* and application of the so-called "*Murray* Factors" to the facts of this case.

     *In Murray,* the debtor's sole asset was a residential cooperative apartment in Manhattan,

and the corresponding shares which he held with his wife in a tenancy by the entirety.  900 F.3d

at 53.  The apartment was appraised at $4.6 million.  The debtor's sole creditor ("Wilk

Auslander") held a $10.7 million state court judgment against the debtor that was secured by a

lien on the cooperative shares.  *Id.* at 57.  Under New York law, the creditor was permitted to

cause the cooperative shares to be sold in a judgment execution sale, but neither the creditor nor

third-party purchaser of those shares would have the right to execute on the debtor's wife's

interest in the apartment (as a tenant by the entirety), to force a partition or sale of the apartment,

or to inhabit the apartment.  *Id.* at 61.   As part of its effort to collect the judgment, Wilk

Auslander filed an involuntary petition against the debtor. It was undisputed that in filing the

petition Wilk Auslander was forum shopping, as it sought to take advantage of the bankruptcy

remedies that would allow it to force a sale of the apartment, notwithstanding the debtor's wife's

interest, which would be recognized after the sale. *Id.* at 57.[9]

     The debtor moved to dismiss the petition under sections 303(i) and 305(a), with costs or

damages to be awarded to the debtor or, alternatively, for the bankruptcy court to abstain from

hearing the petition. *Id.* The debtor did not dispute that the involuntary petition complied with

---

[9]   Under section 363(h), a judgment creditor, like Wilk Auslander, could sell both the debtor's interest and the
interest of any co-owner, "including a tenancy by the entirety."  11 U.S.C. § 363(h).

section 303 of the Bankruptcy Code and the bankruptcy court (Gerber, J.) assumed, for the

purposes of its analysis, that if there otherwise were no grounds to dismiss the petition, the

involuntary case could continue. The bankruptcy court dismissed the petition *sua sponte* for

cause under section 707 of the Bankruptcy Code, finding, in part, that "the petition amounted to

an improper exploitation of the bankruptcy system." *Id.*[10]  In doing so, the court identified the

following nine factors as relevant to its analysis: (1) the bankruptcy court was the most recent

battlefield in a long-running, two-party dispute; (2) Wilk Auslander brought the case solely to

enforce a judgment; (3) there were no competing creditors; (4) there was no need for *pari passu*

distribution; (5) assuming there were fraudulent transfers to be avoided, Wilk Auslander could

do so in another forum; (6) Wilk Auslander had adequate remedies to enforce its judgment under

non-bankruptcy law; (7) Wilk Auslander invoked the bankruptcy laws solely to secure a

benefit—the ability to execute on both Murray and his wife's interests in their apartment under

11 U.S.C. § 363(h)—that it does not have under non bankruptcy law and without a creditor

community to protect; (8) no assets would be lost or dissipated in the event that the bankruptcy

case did not continue; and (9) Murray did not want or need a bankruptcy discharge." *Id. See also*

*In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016).

The district court affirmed, finding that the bankruptcy court did not abuse its discretion

by dismissing the involuntary case for cause under section 707.  *Id.* at 58. *See also In re Murray*,

565 B.R. 527, 534 (S.D.N.Y. 2017).  In doing so, it agreed with the bankruptcy court that "New

York law provides a sufficient means for Wilk Auslander to enforce its judgment and Wilk

Auslander's inability to execute on Murray's wife's interest under that law does not, under these

---

[10]    Further, the bankruptcy court "declined to reach the question of whether Wilk Auslander filed the petition in
bad faith; it declined to grant Murray's request for an award of sanctions; and it found no need to act on Murray's
motion to abstain under Section 305(a)." *In re Murray*, 900 F.3d at 58.

circumstances, justify a need for relief in bankruptcy court." 900 F.3d at 58. On appeal, the

Second Circuit agreed that the nine factors that the bankruptcy court weighed in granting relief

under section 707 court favored dismissal. *Id*. at 61.[11] In concluding that the bankruptcy court did

not abuse its discretion in finding "cause" to dismiss the involuntary case, the Second Circuit

"focus[ed] particularly on the following: (1) Wilk Auslander cannot show that it will be

substantially prejudiced by relying on New York remedies; and (2) the interests of the debtor and

the bankruptcy system as a whole would be advanced if this case were dismissed." *Id*. The Court

reviews those factors below.

The circuit found that Wilk Auslander could not show that it would be substantially

prejudiced if left solely to its remedies under New York law, because it was not certain that Wilk

Auslander would be authorized to sell the apartment in a bankruptcy sale under section 363(h) of

the Code or that if authorized, a sale under section 363(h) would yield a higher return to Wilk

Auslander than a sale under New York law. *Id.* at 62 ("We are therefore convinced that under

these circumstances, Wilk Auslander has not shown that its interests would be substantially

prejudiced if it were denied access to bankruptcy remedies.") Moreover, the court found that

Wilk Auslander misplaced its focus on maximizing the value of the Murray's proposed

bankruptcy estate because that estate should not have been in bankruptcy. *Id*. It reasoned that

Wilk Auslander had not demonstrated that the case called for "the collective remedies available

---

[11]     In reviewing those factors, the Court explained that

> Distilled to their essence, the bankruptcy court noted that Wilk Auslander's petition was part of a
> long-running, two-party dispute, there were no other creditors to protect, and it had been brought
> solely as a judgment enforcement device for which adequate remedies existed in state law. The
> bankruptcy court also noted that Murray did not want or need a discharge and no other goals of
> bankruptcy, such as *pari passu* distribution among competing creditors, would be served by
> continuing the petition.

900 F.3d at 61.

only in bankruptcy court." It found that since the case "involve[d] one creditor and no risk of

asset depletion in favor of other creditors[,] Wilk Auslander's preference for bankruptcy

remedies to solve a two-party dispute cannot outweigh the lack of any other bankruptcy-related

purpose." *Id.* (citations omitted).    The bankruptcy court found that Murray did "not need, or

want, a discharge." *Id.* at 61.  In considering whether the interests of the debtor would be

advanced by if the case were dismissed, the circuit found no error in that determination and

noted that "Murray's interest in not participating in this involuntary case is evidenced by his

vigorous opposition to the petition." *Id.* at 63.  Moreover, it rejected Wilk Auslander's assertion

that Murray's lack of desire or need for a discharge was irrelevant to whether there was "cause"

to dismiss the case. The circuit found that "involuntary bankruptcy proceedings are serious

measures with drastic repercussions for the debtor. Such petitions are *involuntary* rather

than *voluntary* precisely because it is the creditor, rather than the debtor, who seeks the

advantages of the bankruptcy forum. Contrary to Wilk Auslander's contention, the interests of a

debtor *must* be considered when determining whether cause exists to dismiss." *Id.* at 63 n.7

(citing *In re Smith*, 507 F.3d at 72).

Finally, the Second Circuit found that "the bankruptcy court appropriately recognized the

interest of the bankruptcy system, and thus the public interest, in preventing parties from

exploiting the bankruptcy system for non-bankruptcy-related reasons, especially when adequate

remedies exist in state courts." *Id.* at 63.  It reasoned that if it disregarded those interests, the

bankruptcy court would be inundated with cases more appropriately handled in state court, to the

detriment of the bankruptcy system. *Id.* ("Were we to ignore those interests, we would likely see

an increase of new bankruptcy filings in cases that are more appropriately handled in state court.

This increase would divert the valuable resources and attention of specialized bankruptcy courts

20

to matters intended to be addressed in state court—a result that is antithetical to the purpose of having a separate bankruptcy system in the first place."). In summary, the Second Circuit found that the bankruptcy court did not abuse its discretion under section 707(a) in dismissing the case "when it declined to serve as a 'rented battlefield' or 'collection agency' " for Wilk Auslander, because "continuation of [the] case would serve none of the Bankruptcy Code's goals or purposes, including the specific goals of an involuntary bankruptcy petition, whose detriments for debtors are meant to be balanced by benefits to creditors that would be unachievable in another forum, and . . . the sole creditor is not substantially prejudiced by remedies available under state law[.]" *Id.*

Although the Landlord does not hold a judgment against Newbury and this Court is not merely another stop in a long-running dispute among the parties (*Murray* Factors 1-2), the Court finds that application of the *Murray* Factors supports the dismissal of the case. During argument, the Landlord emphasized that, as of the Petition Date, Newbury had three creditors which it says means that it has competing creditors to Newbury's assets and, as such, that there is a need for *pari passu* distribution of estate assets among them that can only be accomplished under the Bankruptcy Code. It also contended that assets will be lost if the Court dismisses the case because the Alleged Debtor will be free to use the funds held on deposit in its operating account pursuant to the Trustee Stipulation without regard to the claims of its creditors. The Court finds no merit in those arguments. First, this is a two-party case. There are no "competing creditors." The Landlord holds over 98% of the debt in the case, and the two other creditors have not appeared in the case or sought any relief from Newbury. There is no need for *pari passu* distribution of estate assets among the creditors. (*Murray* Factors 3-4). Moreover, the Landlord has not demonstrated that it will be substantially prejudiced by relying on its State Court

remedies that it invoked when it commenced the State Court Action. (*Murray* Factor 6). Since

Newbury no longer operates the Garage, there is no danger to the Landlord that Newbury can

continue to effectuate the alleged fraudulent transfers through the cash sweeps of its operating

account. The Landlord filed the Involuntary Petition in lieu of proceeding in the State Court

Action. The Landlord advised the State Court of the filing of the petition, and of the automatic

stay of continued prosecution of the State Court proceeding.  With the dismissal of this case, the

Landlord will be free to continue its litigation in the State Court Action.  If the State Court

appoints a Receiver, as the Landlord contends it should, the Receiver will perform the same

functions as a chapter 7 trustee and prevent the Alleged Debtor from using the funds in the

operating account and investigate and prosecute, as appropriate, actions to avoid and recover

alleged fraudulent conveyances or preferential transfers by the Alleged Debtor to its officers,

director and affiliates. Even if the Landlord fails to persuade the State Court to appoint a

Receiver, the Landlord is free to petition the State Court for prejudgment attachment of the funds

on deposit in the operating account. *See* N.Y. C.P.L.R. 6202 ([a]ny debt or property against

which a money judgment may be enforced as provided in [CPLR 5201] is subject to

attachment."); *see also Top Apex Enterprises Ltd. v. Cayton*, 32 Misc. 3d 1204(A) (N.Y. Sup. Ct.

2011) ("Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy

upon the property of the debtor in order to conserve that property for eventual execution."). It

can also bring actions in State Court -  on its own account - to avoid and recover alleged

fraudulent conveyances and preferential transfers under state law.   *See, e.g.,* N.Y. Debt. & Cred.

Law §§ 273, 274. (*Murray* Factor 5).  Finally, since Newbury is a limited liability company, it is

not eligible to receive a discharge. *See* 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a

discharge, unless ... the debtor is not an individual."). *See also In re Hansen*, 432 B.R. 758

(Bankr. N.D. Ill. 2010) (LLC could not receive a discharge); *In re Ryan*, 443 B.R. 395 (Bankr.

N.D. Tex. 2010) (Corporations and limited liability companies may not, under § 727(a)(1),

discharge debt). (*Murray* Factor 9). As the foregoing demonstrates, application of the *Murray*

Factors supports the dismissal of this case.

In filing the Involuntary Petition, the Landlord is not merely forum shopping. As the sole

beneficiary of estate recoveries through litigation under the Bankruptcy Code, it seeks a "risk

free ride" with respect to the prosecution of the claims it says the estate can assert against

Newbury, Icon Property and/or their affiliates. By shifting the costs of prosecuting those actions

to the estate, it has no risk, and 100% of the upside (net of costs), in the trustee's prosecution of

those claims. That is plainly not a benefit available to the Landlord outside of bankruptcy.

(*Murray* Factor 7). In this light, there are sound policy reasons for dismissing the case and

barring the Landlord from pursuing that litigation strategy. Prosecution of the Involuntary

Petition will not promote the Bankruptcy Code's goal of ensuring fair distributions of assets

among creditors. *See In re Murray*, 900 F.3d at 59 ("Involuntary bankruptcy petitions help

ensure the orderly and fair distribution of an estate by giving creditors an alternative to watching

nervously as assets are depleted, either by the debtor or by rival creditors who beat them to the

courthouse."); *see also In re Hentges,* 351 B.R. 758, 772 (Bankr. N.D. Okla. 2006) ("Creditors

are justified in filing an involuntary bankruptcy against a debtor where exclusive bankruptcy

powers and remedies may be usefully invoked to recover transferred assets, to 'insur[e] an

orderly ranking of creditors' claims' and 'to protect against other creditors obtaining a

disproportionate share of debtor's assets.' " (quoting *In re Better Care, Ltd.,* 97 B.R. 405, 411

(Bankr. N.D. Ill. 1989); *In re Tichy Elec. Co.,* 332 B.R. 364, 372 (Bankr. N.D. Iowa

2005) (noting that the "purpose of an involuntary filing should be the equal distribution of assets

among creditors"). Instead, it undermines the process by permitting the Landlord to "exploit[]

the bankruptcy system for non-bankruptcy-related reasons." *In re Murray*, 900 F.3d at 63.

Moreover, if the case proceeds it will encourage other, similarly situated creditors to seek the

same type of relief – to the detriment of the bankruptcy process.  This Court "would likely see an

increase of new bankruptcy filings in cases that are more appropriately handled in state court.

This increase would divert the valuable resources and attention of specialized bankruptcy courts

to matters intended to be addressed in state court—a result that is antithetical to the purpose of

having a separate bankruptcy system in the first place." *Id.* at 63.

    The Court finds that the Alleged Debtor has established cause to dismiss the Involuntary

Petition under section 707 of the Bankruptcy Code.


Abstention Under 11 U.S.C. § 305(a)

    Section 305(a)(1) of the Bankruptcy Code permits a bankruptcy court, after notice and

hearing, to dismiss a bankruptcy case, or suspend all proceedings in a bankruptcy case, "if the

interests of creditors and the debtor will be better served by such dismissal or suspension." 11

U.S.C. § 305(a)(1). By its terms, section 305(a) applies to entire cases or all proceedings in a

case, not particular proceedings in a case. Abstention under section 305 "is an extraordinary

remedy and is appropriate only in the situation where the court finds that both 'creditors and the

debtor' would be 'better served' by a dismissal." *In re Globo Comunicacoes e Participacoes*

*S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004) (citations omitted). *See also In re Eastman,* 188 B.R.

621, 625 (9th Cir. BAP 1995) ("the test under § 305(a) is not whether dismissal would give rise

to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors

dismissal. Rather, the test is whether both the debtor and the creditors would be "better served"

by a dismissal.").  In applying their discretion in determining whether to grant relief under

section 305(a) courts consider the following factors (the "Factors"):

> 1) The economy and efficiency of administration;

> 2) Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;

> 3) Whether federal proceedings are necessary to reach a just and equitable solution;

> 4) Whether there is an alternative means of achieving an equitable distribution of assets;

> 5) Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

> 6) Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

> 7) The purpose for which bankruptcy jurisdiction has been sought.

*See, e.g., In re Paper I Partners, L.P.,* 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *In re TPG*

*Troy, LLC,* 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013). Decisions to abstain under section 305(a)

are made on a case-by-case basis. *See In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 464 (Bankr.

S.D.N.Y. 2008) ("The decision to abstain under § 305(a)(1) should be made on a case-by-case

basis."); s*ee also In re Argus Group 1700, Inc*., 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996) ("As

with § 1112(b), the decision whether to dismiss under § 305(a) is discretionary and must be

made on a case-by-case basis."). "[W]hile all factors are considered, not all are given equal

weight in every case." *In re Monitor Single Lift I, Ltd.,* 381 B.R. at 465. *See also In re Acis*

*Capital Management, L.P*., 584 B.R. at 146 (noting that in weighing the factors "not all are given

equal weight in every case and the court should not conduct a strict balancing") (citing *In re TPG*

*Troy, LLC,* 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013)).

Application of the Factors in this case clearly weighs in favor of dismissing the case. First, this Court is not the most economical and efficient forum in which to resolve this dispute because, among other things, as discussed above, neither the Alleged Debtor, nor its three creditors need relief under the Bankruptcy Code. (Factor 1). The Debtor is not operating, has de minimis assets (if any) and does not qualify for a bankruptcy discharge. The creditors do not require the protection of the automatic stay. Moreover, the Landlord can get all the protection it needs in State Court, and that court is the most economical and efficient forum in which to resolve the Landlord's dispute with the Alleged Debtor. Courts group Factors 2–6 together "because they touch upon the availability of an alternate forum to efficiently achieve an equitable distribution. *See In re Acis Capital Mgmt., L.P.*, 584 B.R. at 146. "A suitable alternate forum will be deemed to exist if in that forum 'there are pending arrangements that will equitably satisfy the creditors and not be unduly burdensome or prejudicial to the debtor,' so that continuation of the bankruptcy proceeding will be 'duplicitous and uneconomical.' " *In re Navient Solutions, LLC*, Case No. 21-10249, 2021 WL 857114, at \*14 (Bankr. S.D.N.Y. March 8, 2021) (quoting *In re RAI Marketing Services, Inc.*, 20 B.R. 943, 946 (Bankr. D. Kan. 1982)). There is no question that the State Court – the forum of the Landlord's choice - is such a forum. It can efficiently adjudicate the Landlord's claims against the Alleged Debtor. Moreover, an involuntary proceeding in this Court is neither necessary, nor appropriate, to reach a just and equitable solution for the Landlord.

Finally, this Court is not a "collection agency." *In re Mountain Dairies, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007). Factor 7 – i.e., the purpose for which bankruptcy jurisdiction has been sought - will be the "most important factor," when the involuntary petition appears to be a "debt collection tool" in a two-party dispute. *In re Persico Contracting and Trucking, Inc.*,

2010 WL 3766555, at *4. *See also In re Mountain Dairies, Inc.*, 372 B.R. at 635 (finding that the "Court would be compelled to abstain pursuant to 11 U.S.C. § 305 because this is essentially a two-party dispute for which the parties have adequate remedies in state court.").  That is plainly the situation here. The Landlord's only reason for filing the Involuntary Petition is to seek the appointment of a chapter 7 trustee who will possess the authority to investigate and, if appropriate, to pursue claims against Newbury's affiliates, officers, directors and third parties relating to the alleged fraudulent conveyances and breaches of fiduciary duties. The Landlord has not demonstrated why it cannot obtain substantially the same relief in the State Court Action. Abstention is particularly appropriate in this two-party dispute because relief is available to the Landlord in the State Court. *See, e.g., In re Selectron Mgmt. Corp.*, 2010 WL 3811863, at *7 (Bankr. E.D.N.Y. Sept 27, 2010) (Court dismissed the involuntary petition under section 305, finding it was "a two-party dispute, and it is not the function of the bankruptcy court to act as a collection device for judgment creditors."); *In re Ishaky,* 2010 WL 935572, at *5 (Bankr. E.D.N.Y. March 11, 2010) (abstaining from involuntary petition where court found involuntary case "to be a two party dispute in which the parties have adequate remedies in State Court.");  *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634-35 (Bankr. N.D. Oklahoma 2005) ("To the extent there is a dispute between Pogue and Vargas, the state court stands ready to serve as their forum. . . . Neither party can demonstrate prejudice if they are forced to litigate their dispute in a state court of competent jurisdiction; indeed, that is what Loss Mitigation and Vargas seek.").

Based upon its analysis of the Factors, the Court finds that the interests of creditors and

the Alleged Debtor will be better served by dismissing this case. Accordingly, as an additional

ground for relief, the Court dismisses the Involuntary Petition pursuant to section 305(a) of the

Bankruptcy Code.

Abstention Under 28 U.S.C. § 1334(c)

Section 1334(c)(1) vests the Court with the power to exercise its discretion and abstain

from hearing particular proceedings in a bankruptcy case.  It states, as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section
> prevents a district court in the interest of justice, or in the interest of comity with
> State courts or respect for State law, from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). This section speaks to abstaining from "a proceeding" arising under title

11 or arising in or related to a case under title 11, not to a "case under title 11." Section 305(a)

governs the latter.  In *In re Andrus*, 338 B.R. 746 (Bankr. E.D. Mich. 2006), the court noted the

difference between section 305(a) and 28 U.S.C. § 1334(c)(1), as follows:

> In general, section 305 of the Bankruptcy Code grants significant discretion to the
> bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction
> over a case filed under title 11.... Its narrow breadth is consistent with
> congressional intent to prevent the commencement and continuation of disruptive
> involuntary cases .... Under 28 U.S.C. § 1334(c)(1), the court may, in the interest
> of justice, abstain "from hearing a particular proceeding arising under title 11 or
> arising in or related to a case under title 11." If a party wishes the bankruptcy
> court to abstain from a particular adversary proceeding, section 1334(c) is the
> proper vehicle; if it seeks suspension of all proceedings within a case, section
> 305(a) should be invoked.

*Id.* at 750 (quoting 2 *Collier on Bankruptcy* ¶ 305.01[1] (15th ed. rev.2005) (footnotes omitted)).

*See also In re Owen-Johnson*, 115 B.R. 254, 257 (Bankr. S.D. Cal. 1990) ("Abstention by a

bankruptcy court from exercising jurisdiction under 11 U.S.C. § 305(a) is with regard to the

entire case, while under 28 U.S.C. § 1334(c)(1), the court may, in the interest of justice, abstain

28

from hearing a *particular proceeding* arising under title 11 or arising in or related to a case

under title 11.") (emphasis in original) (internal quotation marks omitted)).

The Alleged Debtor is asking the Court to abstain from hearing the case, not to abstain

from hearing a particular proceeding in the case.  Indeed, there are no adversary proceedings

pending in this case. As such, section 1334(c)(1) is not relevant herein.  *See In re Efron*, 535

B.R. 505, 510 (Bankr. D. P.R. 2014) ("In the present case, there is no pending adversary

proceeding before the Court. As a result, the proper abstention avenue for this bankruptcy case

is 11 U.S.C. § 305(a)."), *aff'd* 529 B.R. 396, 405 n.11 (B.A.P. 1st Cir. 2015) (Unlike § 305(a),

which permits dismissal of all proceeding within the case, section 1334(c) "provides for

abstention from particular proceedings.").

The Court denies the Alleged Debtor's request for relief under section 1334(c)(1).


Request For Fees

The Alleged Debtor seeks fees and related costs associated with the Involuntary Petition

pursuant to section 303(i) of the Bankruptcy Code. Motion ¶¶ 38-41. In support of the request,

the Alleged Debtor contends the courts within the Second Circuit consider the totality of the

circumstances in determining whether to award attorneys' fees, including "(1) the merits of the

involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3)

the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and

objectives behind the filing of the petition." *In re TPG Troy, LLC*, 793 F.3d 228, 235 (2d Cir.

2015) (internal citations omitted).  The Alleged Debtor argues the Court should award incurred

fees and related costs pursuant to section 303(i) because "the Petitioning Creditor has used the

bankruptcy process for an improper purpose, as a collection tactic in a two party dispute, when it

already had all necessary and adequate remedies available to it in the State Court Action."

29

Motion ¶ 39. The Alleged Debtor further contends that the Petitioning Creditor cannot meet its burden of proof to justify a denial of the Alleged Debtor's costs. *Id*. ¶ 40 (citing *In re Anmuth Holdings, LLC*, 600 B.R. 168, 186 (Bankr. E.D.N.Y. 2019).

Section 303 of the Bankruptcy Code states that "if the court dismisses a petition under [section 303] other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

1)      against the petitioners and in favor of the debtor for—
     A.  costs; or
     B.  a reasonable attorney's fee; or

2)      against any petitioner that filed the petition in bad faith, for—
     A.  any damages proximately caused by such filing; or
     B.  punitive damages.

11 U.S.C. § 303(i). Thus, "section 303(i) permits the court upon dismissal of an involuntary petition to award costs, attorneys fees, damages, and, if the petition had been filed in bad faith, punitive damages." *In re Sun World Broadcasters, Inc*., 5 B.R. 719, 723 (Bankr. M.D. Fla. 1980). However, costs and fees allowable under section 303(i) are not available in a case that is dismissed under a section other than section 303. *Id.* ("costs and fees allowable under s 303(i) are not possible in a case that is dismissed under s 305"); *see also Matter of Luftek, Inc*., 6 B.R. 539, 549 n.6 (Bankr. E.D.N.Y. 1980) ("The Code authorizes assessment of costs and damages if a case is dismissed under section 303 . . . This section does not apply to dismissals under section 305 of the Code.")[12]

---

[12]     In each of the cases that the Alleged Debtor cited in support of its request for fees, the court dismissed the involuntary petition pursuant to section 303—not any other section of the Bankruptcy Code. *See In re TPG Troy, LLC*, 793 F.3d at 233-237 (finding the petitioner failed to meet its burden under 11 U.S.C. § 303(b)(1) and awarding fees under section 303(i)); *In re Anmuth Holdings LLC*, 600 B.R. 168, 184 (Bankr. E.D.N.Y. 2019) (Petitioners failed to satisfy the requirements of section 303. Court held failure to oppose a dismissal motion is not dismissal "on consent" and therefore relief under section 303(i) is available.).

As the Court has, for the reasons set forth herein, denied the Alleged Debtor's request

that it dismiss the Involuntary Petition pursuant to section 303(h), fees and damages are not

available under section 303(i). The Court therefore denies the Alleged Debtor's request for fees

and damages.

### Conclusion

Based on the foregoing, the Court dismisses the Involuntary Petition pursuant to sections

305(a) and 707 of the Bankruptcy Code. The Court denies the Alleged Debtor's request for relief

under 28 U.S.C. § 1334(c)(1) and its request for costs and reasonable attorneys' fees under

section 303(i) of the Bankruptcy Code.

IT IS SO ORDERED.

Dated: New York, New York
      March 25, 2021                /s/ *James L. Garrity, Jr.*
                                           Honorable James L. Garrity, Jr.
                                           United States Bankruptcy Judge